1 | Bruce P. Babbitt, WSBA #4830
Jameson Babbitt Stites & Lombard, PLLC
2 | 999 Third Ave., #1900
Seattle, WA 98104
3 | Telephone: 206-292-1994
Attorneys for Plaintiff
4

5

6 | **Filed Under Seal as Required by the False Claims Act, 31 USC 3729-3731**

7 | UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
8

9 | UNITED STATES OF AMERICA, ex rel.    )
SALINA SAVAGE, SAVAGE LOGISTICS,    )
10 | LLC,    )
    )    No. CV-10-5051-EFS
11 |                          Plaintiff,    )
    )
12 |    vs.    )
    )    SECOND AMENDED COMPLAINT
13 |    )    FOR VIOLATION OF FEDERAL FALSE
    )    CLAIM ACT: SMALL BUSINESS ACT
14 | WASHINGTON CLOSURE HANFORD LLC;    )    15 USC §637 AND 15 USC §645;
FEDERAL ENGINEERS AND    )    HUBZONE 15 USC §657;FOR
15 | CONSTRUCTORS, INC., PHOENIX    )    INTERFERENCE WITH CONTRACT
ENTERPRISES NW, LLC; DENNIS    )    AND FOR VIOLATION OF THE
16 | HOUSTON, BERNIE LAVERENTZ, and    )    WASHINGTON STATE UNFAIR
JONETTA EVERANO, DOES I-V    )    TRADE PRACTICES ACT RCW
17 | PHOENIX-ABC JOINT VENTURE;    )    19.86.010, et seq.
ACQUISITION BUSINESS CONSULTANTS;    )
18 | JESSICA MORALES; SAGE TEC LLC;    )
LAURA SHIKASHIO.    )    JURY TRIAL DEMANDED
                          Defendants.    )
19

20 |                          **INTRODUCTION**

21 |         1.        This action is based upon continuing attempts by Washington Closure Hanford

22 | (WCH) and Federal Engineers and Constructors (FE&C), Phoenix Enterprises Northwest

23 | (PENW), Dennis Houston, Bernie Laverentz and Jonetta Everano, and Does I-V to present false

24 | claims in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 and 3730.

25 |         2.        Defendants have presented false claims for payment to the United States of

26 | America by means of falsely certifying their compliance with the terms of the River Corridor

SECOND AMENDED COMPLAINT - 1

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900            TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

Closure Contract, Contract No. DE-AC06-05RL 14655 and the requirement of Section J-4 that it contract 65% of the work to qualified small businesses, 22% to small disadvantaged businesses, and 13% to women-owned small businesses.  Defendants have also presented false claims by expressly and impliedly certifying that the Truck and Pup subcontract, and succeeding contracts let by WCH to FE&C or PENW, were competed in accordance with federal law, regulations, and the requirements of the River Closure Contract, including, but not limited to the Subcontracting Plan that was required of WCH as a condition of award and payments.

3.    Defendants violated federal law in knowingly misrepresenting the small business size status of PENW in violation of 15 USC § 645(d) and in awarding contracts to FE&C and PENW knowing that they could not qualify as a small disadvantaged or women-owned business.

4.    The false certification was also an attempt to avoid the penalty of up to $3 million for each milestone and after a total reduction of otherwise earned fees for the contract up to $9 million.  This is set forth in Section H-28 of the River Closure Contract.

5.    WCH, after the unlawful award to PENW/FE&C in May, 2009, continued to exercise options and award subcontracts to PENW/FE&C that were set aside for small businesses while knowing that PENW and FE&C were not qualified to receive an award.

6.    WCH has, prior to, and since 2009, failed to carry out the Subcontracting Plan in good faith and thereby placed itself in material breach of its contract with the Department of Energy (DOE).  WCH has falsely certified to the DOE that it was competing contracts as required by its contract, applicable laws and regulations, while at the same time failing to award contracts based upon competition and actively conspiring to rig awards to favored subcontractors.

7.    Defendants have knowingly violated Title 13 CFR 121 by competing for, accepting, and awarding contracts set aside for competition and award to Small Disadvantaged Businesses.

8.    Defendants Acquisition Business Consultants (ABC), Phoenix Enterprises Northwest (PENW), Jessica Morales, Jonetta Everano, and Washington Closure Hanford (WCH)

SECOND AMENDED COMPLAINT - 2

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

1  have conspired and knowingly awarded and accepted contracts set aside for HUBZone certified

2  businesses to entities known to them not to be certified HUBZone businesses, in violation of the

3  subcontracting plan made part of the DOE Federal Procurement describe herein, the Federal

4  Acquisition Regulations (FAR) and 15 USC §§637, 645, and 657.

5      9.    In early 2009, aware of pending subcontracts that would be limited to Small

6  Disadvantaged Women Owned Businesses and/or Service Disabled Veteran Owned Small

7  Businesses, agents of FE&C - Bernie Laverentz, in conjunction with WCH's contracting officer,

8  Dennis Houston - began attempts to recruit a front company to "compete" for the River Closure

9  Contract work using all of FE&C's resources and funding, which front company would be

10  awarded the subcontract by WCH through Mr. Houston's intervention.  This activity which led to

11  the award of such subcontract on RFP R009166A00, for Transportation of Direct Loaded Bulk

12  materials from 100 Area Waste Sites to the ERDF, "Truck and Pup", to PENW, a company

13  known by all defendants to be not qualified to perform such work, and known by all defendants

14  not to be a qualified woman owned small business.  These activities constituted bid rigging.  This

15  was a violation of the contract requirements that subcontracts be competed for without collusion.

16  Subsequent awards to PENW were also awarded based on false certifications by defendants.

17      10.    These false claims represent not only false invoices passed by WCH to the United

18  States, but also losses to the United States based upon the full 67 weeks of contract performance,

19  because the United States was denied more favorable pricing that would have been offered had

20  the subcontract been fairly competed.  The false claims also constituted attempts to avoid the

21  forfeiture under Section H-28 of its contract with the United States, thus constituting a reverse

22  false claim.  Relator Salina Savage brings this action after voluntarily disclosing her knowledge

23  and information to the United States as required by 31 U.C.S. §3730(e) (4) (B), of all of which

24  she has personal knowledge.

25      11.    Defendant WCH threatened to, and subsequently retaliated against Salina Savage

26  if she pursued her successful challenge to the award of the Truck and Pup Contract on the grounds

SECOND AMENDED COMPLAINT - 3

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
999 Third Avenue
Suite 1900        Tel. 206 292 1994
Seattle, WA 98104-4001 Fax 206 292 1995

52970\01000\00613319.DOC.V1 BPB

1    that PENW was not a small business, but was rather affiliated and dependent upon FE&C.   Since

2    that challenge, and the threats from Dennis Houston, WCH's contracting officer, Salina Savage's

3    company, Savage Logistics, has not only not been awarded any subcontracts with WCH at the

4    Hanford Reservation, but also has not been allowed to even compete for the award of

5    subcontracts that were to be set aside for award to qualified small disadvantaged businesses.

6         12.    The claims by Savage Logistics for interference with contract against the named

7    individuals and organizations arise out of the same bid rigging and false certifications that

8    underlay the false claims act.  These illegal activities resulted in Savage Logistics being denied a

9    contract that it otherwise would have been awarded.

10                           **JURISDICTION AND VENUE**

11        13.    This Court has subject matter of the Federal False Claims action pursuant to 28

12    U.S.C. §1331 and 31 U.S.C. §3732(a), which specifically confers jurisdiction on this Court for

13    actions brought pursuant to 31 U.S.C. §3729 and §3730.  31 USC §3730(a) provides that "[a]ny

14    action under section 3730 may be brought in any judicial district in which the defendant, or in the

15    case of multiple defendants, any one defendant can be found, resides, transacts business or in

16    which any act proscribed by section 3729 occurred."

17        14.    This Court has personal jurisdiction over defendants Dennis Houston, Bernie

18    Laverentz, WCH, FE&C, Phoenix-ABC A Joint Venture, Acquisition Business Consultants, Inc.

19    (Hereafter ABC), Jessica Morales, Jonetta Everano, and PENW.

20        15.    This Court has pendant jurisdiction of the claims of Savage Logistics for

21    interference with contract and for violation of the Washington State Unfair Trade Practices Act.

22        16.    Salina Savage has personal knowledge of the details of this scheme to submit

23    false claims.

24        17.    Salina Savage is the original source of the information upon which this action is

25    based.   She provided information for her company as part of a May, 2009 size protest to the SBA

26

SECOND AMENDED COMPLAINT - 4

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

that lead to the SBA's ruling that Jonetta Everano's company, PENW was not a small disadvantaged woman owned business.

18.    The new, amended claims are based upon her personal knowledge and research.

## THE PARTIES

19.    Relator Salina Savage has been working in transportation since 1978.  In 1987, Salina Savage began working for a family owned transportation business, Savage Western Transport, Inc.  She there implemented the company policies covering transportation of hazardous materials, compliance with U.S. Department of Transportation, Washington Utilities and Transportation Commission, and U.S. Department of Ecology regulations and practices.

20.    In 1994, Salina Savage commenced work at Hanford for a Department of Energy subcontractor as a transportation specialist.  She became a member of the DOE Motor Carrier Evaluation Program (MCEP) to ensure that only highly qualified carriers transported DOE commodities.  Relator Savage was also a member of the DOE Transportation Compliance Evaluation Assistance Program (TCEAP) conducting technical assessments of DOE field elements and assistance in transportation and packaging management activities.

21.    While at Hanford, Relator Savage became the subject matter expert for the Fluor Hanford spare parts administrator to administer and review spare parts inventory, establish quality levels and procurement specifications for critical spare parts that support the Hanford Nuclear Facilities by the passport data base system.

22.    Relator Savage trained design authorities (engineers) and quality assurance personnel on the passport system for the maintenance, inventory and control of spare parts.

23.    While working at the Hanford Facility, Relator Savage received two "Continuous Process Improvement Awards" for identifying new business practices for inventory control.

24.    Relator Savage has taken part in various training courses and received significant certifications.  These include, *inter alia*, motor carrier safety regulations seminars, fleet safety and compliance seminars, hazardous material waste and radioactive transportation training, waste

SECOND AMENDED COMPLAINT - 5

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900        TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

shipper certification training, certified Commercial Vehicle Safety Alliance inspector, transportation compliance evaluation systems program training, and others.

25.     Relator Savage is certified by U.S. Department of Transportation Motor Carrier Operating Authority License, Washington Utilities and Transportation Permit, Washington Transporter License, Washington State Department of Ecology Transporter Permit, U.S. Department of Transportation, PHMSA Hazmat Registration, U.S. Small Business Administration, Small Disadvantaged Business (SDB), Certification and 8-A Business Development Certification, and others.

26.     Jonetta Everano was employed by WCH from approximately 2004 until 2007, at which time she accepted employment with FE&C.   While at WCH her responsibilities included providing technical field support and field subcontract administration/oversight for Field Remediation group on the River Corridor Contract.   She reviewed and approved baseline schedule, submittals and work/safety procedures; monitored, inspected, and approved subcontractor work against standards, acceptance criteria, and schedule milestones; analyzed and approved subcontractor invoices and prepared change request; negotiated with subcontractors for change notice and added work scope;   coordinated subcontractors site permits, training requirements, and maintained project files; and initiated change notices, including identifying scope of work and estimating and approving cost.

27.     On information and belief Jonetta Everano was a co-worker and was and is a personal friend of Sue Palmersheim, the Subcontract Specialist of WCH, who as part of her regular duties as WCH's Subcontract Specialist was in charge of, *inter alia,* assigning North American Industry Classification System Codes to subcontract work, advertising subcontracts for competition, evaluating the bids of subcontractors, making awards, and reporting compliance with the Subcontracting Plan to the DOE.

SECOND AMENDED COMPLAINT - 6

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

28.    The connections and relationships alleged in paragraphs 26 and 27 above would have required disclosure under the OCI (organizational conflict of interest) regulations binding upon all of the defendants.

29.    Jonetta Everano, at all times material to the advertisement of the initial Truck and Pup subcontract and the award of the I U 2 & 6 remediation subcontract:

a.    Was employed full time at the offices of Federal Engineers and Constructors (FE&C) as a construction services manager.

b.    At the time of procurement she had no separate address from FE&C, shared the same telephone number and fax number as FE&C, and only signed a sublease on June 1, 2009, after notice of award.

c.    She purchased administrative services, plant, labor materials, tools, supplies, transportation, equipment, supervision, and FE&C was to perform all operations necessary to perform the contract.

d.    Her business had no employees or receipts.  Defendant Bernie Laverentz was authorized, with her to negotiate the procurement.

e.    She had no contractor's registration, held no required certifications, and lacked the experience required to perform.

f.    Her business had no Department of Transportation Motor Carrier Number

g.    Her business had no Federal Employee Tax ID Number

h.    The SBA found as a fact that PENW was affiliated with FE&C and that FE&C was, with PENW, over the average receipt limit of $14 Million annually.  This made PENW other than a small disadvantaged business and not eligible for award per WCH's basis of award.

30.    Bernie Laverentz is the Vice President of FE&C.  Beginning in 2009 he began conspiring with Dennis Houston, WCH's Contracting Officer to rig bids and collude to misrepresent the size and independence of subcontractors who would propose to do work under

SECOND AMENDED COMPLAINT - 7

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900        TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

1   the DOE River Closure Contract.  By doing so FE&C would continue to perform the scope of

2   work and receive contract payments and WCH would satisfy its obligations under the contract to

3   use small and disadvantaged businesses.

4        31.     Dennis Houston at all times material to this action was a contracting officer

5   employed by WCH.  As such he had knowledge of upcoming procurements and had the ability to

6   provide information as to the intentions of WCH in choosing to extend the term of subcontracts

7   for hauling, such as the one at issue, to longer than the minimum term specified in the

8   advertisement.

9        32.     Washington Closure Hanford (WCH) is a Washington Limited Liability

10   Company.  Its members are William Poulson, David Pethick, Ellen Livingston-Behan, Mark

11   Spears, and Craig Weaver.  On March 25, 2005, the United States Department of Energy (DOE)

12   awarded the project denominated "River Corridor Closure Contract" Contract No. DE-AC06-

13   05RL 14655 to WCT.  The contract expenditures at issue in this lawsuit are subject to the

14   requirements of the American Recovery and Reinvestment Act of 2009, Public Law 111-5.

15        33.     Federal Engineers and Constructors, Inc. (FE&C) is a corporation formed in 2001

16   whose president is Richard French, a former manager of the U.S. DOE's Office of River

17   Protection (ORP).  ORP awarded the River Corridor Closure contract to WCH. WCH thereafter

18   awarded subcontracts to FE&C.

19        34.     Phoenix Enterprises NW, LLC (PENW) is a Washington Limited Liability

20   Company whose president is Jonetta Everano.  PENW was organized in February, 2009 with

21   FE&C as 49% owner.  Jonetta Everano personally invested no money in the formation of PENW,

22   but rather had PENW loan most of the 51% investment to her out of its future earnings.  PENW

23   had no assets, address, or telephone numbers of its own and only entered into a sublease with

24   FE&C in June, 2009, after it was awarded the initial subcontract and all of the options for Truck

25   and Pup which is one of the subjects of this action. Jonetta Everano was a full time employee of

26

SECOND AMENDED COMPLAINT - 8

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900         TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

1    FE&C.  The SBA determined that PENW was an affiliate of FE&C, not eligible for award of the

2    Truck and Pup Subcontract.

3        35.    At the time of the initial remediation subcontractor award for IU 2&6 in

4    September, 2009, Jonetta Everano was still employed full time by FE&C, and still shared office

5    space.  She did not agree on FE&C's buy-out until February, 2010, and her bonding and insurance

6    still was guaranteed by FE&C until at least June, 2010.

7        36.    Acquisition Business Consultants, Inc. (ABC) is an Alaska Corporation owned by

8    Jessica Morales, whose headquarters were at one time in Wasilla, Alaska.

9        37.    In 2010 ABC formed a Joint Venture with PENW denominated Phoenix-ABC A

10   Joint Venture.

11       38.    Does I-V are other employees of the defendants, whose identity is presently

12   unknown to Plaintiffs, who were co-conspirators in the acts set forth in this complaint.

13              **THE CONTRACT AND LEGAL REQUIREMENTS OF COMPETITION**

14                   **AND AWARD TO SMALL BUSINESSES**

15       39.    WCH, in order to be eligible to perform the subject project had to certify and to

16   maintain itself in compliance with various contract clauses, regulations and laws, including but

17   not limited to 15 USC §§637, 645, and 657,  and its subcontracting plan that required that it

18   makes good faith efforts to award to small woman owned, disadvantaged businesses.

19       40.    On July 22, 2004, WCH submitted its Small Business Subcontracting Plan (Plan)

20   as required by its contract with DOE.  The Plan was a required submittal under 15 USC §637 and

21   the Federal Acquisition Regulations (FAR) 52.219-8 and 52.219.9.  Figure 2 to the Plan identified

22   principal categories of opportunities for small business, including specifically soils excavation

23   and backfill for women owned small businesses.

24       41.    FAR 52.219.9(d) (9) required a description of the efforts that WCH would make

25   to assure that small businesses, including women-owned small businesses, would have an

26   equitable opportunity to compete for contracts.

SECOND AMENDED COMPLAINT - 9

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
999 Third Avenue
Suite 1900          Tel. 206 292 1994
Seattle, WA 98104-4001 Fax 206 292 1995

52970\01000\00613319.DOC.V1 BPB

42.    FAR 52.219-9 (d) (11) required records of the efforts made by WCH to identify the described small businesses and award contracts to them.

43.    FAR 52.219-9 (k) provided that WCH's failure to comply in good faith with the requirements of the Plan was a material breach of contract.  WCH, in order to be entitled to payment, impliedly certified to the DOE that it was complying in good faith with the terms of the Subcontracting Plan imposed by the FAR and by 15 USC §637 and §645.

44.    FAR 52.219-25(b), part of WCH's federal contract with DOE, provided that: "For subcontractors that are not certified as a small disadvantaged business by the  Small Business Administration, the Contractor shall accept the subcontractor's written self-representation as a small disadvantaged business, unless the contractor has  reason to question the self-representation.

45.    At all times material to this complaint WCH had reason to question PENW's self-representation that it was a small, disadvantaged, woman-owned business.

46.    FAR 52.219-16 "Liquidated Damages-Subcontracting Plan" provides that

a.    Failure to make a good faith effort to comply with the Subcontracting Plan, as used in this clause, means a willful or intentional failure to perform in accordance with the Subcontracting Plan approved under the clause in this contract entitled "Small Business Subcontracting Plan," or willful or intentional action to frustrate the Plan.

WCH has, at all times material alleged in this complaint willfully and intentionally attempted to frustrate the Subcontracting Plan made part of its contract.

47.    DOE regulations, codified in 48 CFR 919.70 established the requirements for a qualified mentor-protégé program.   Section 919.7007 (a) requires that an eligible protégé had to be an independent business that had been in business at least two (2) years prior to applying for enrollment in a mentor protégé program.    All defendants in this action at all times had actual knowledge that PENW had not been in business for at least two years, and was not an independent business.

SECOND AMENDED COMPLAINT - 10

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
999 Third Avenue
Suite 1900          Tel. 206 292 1994
Seattle, WA 98104-4001 Fax 206 292 1995

52970\01000\00613319.DOC.V1 BPB

48.     The American Recovery and Reinvestment Act (ARRA) provides that contracts using recovery act funds be awarded using competitive procedures to the maximum extent possible.

49.     The Aid to Small Business Act, 15 USCS §637(d) requires maximum practicable opportunity for small business, including women-owned and controlled small businesses as defined therein, to participate in federal contracts, and in §637(d) (4) (B) and (D) makes a contractor representation that it is in compliance, and will remain in compliance with the Plan, a condition of award and continuing performance.   Each request for payment by WCH during any time as alleged in this amended complaint that WCH was not in good faith compliance with the Subcontracting Plan is a false implied certification and a false claim.

50.     Section 637(d) (8) (A) requires a representation that the contractor will carry out the requirements of clause (3) of §637 (d) in good faith, and that failure to do so is a material breach of contract.   A contractor in violation, guilty of the aforesaid material breach of contract, is not entitled to payment under its contracts.

51.     The Aid to Small Business Act, 15 USCS §645 Offenses and Penalties, provides in clause (d) that whoever misrepresents the status of any concern as a small business in order to obtain for oneself or for another any subcontract that is to be included as part or all of a goal contained in a Subcontracting Plan required  pursuant to section 637 (d), is subject to fines of not more than $500,000, subject to debarment, and subject to administrative remedies under the Program Fraud Civil Remedies Act of 1986.

52.     Subpart 19.301-1 of the Federal Acquisition Regulations, (FAR) requires an offeror must represent itself as a small business in good faith at the time of the bid or proposal. PENW was not a small business at the time of its proposal for the Truck and Pup Contract and neither it nor FE&C or WCH had any good faith belief that PENW was a small business at the time of its proposal.

SECOND AMENDED COMPLAINT - 11

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970/01000/00613319.DOC.V1 BPB

53.     The Small Business Jobs Act of 2010, enacted September 27, 2010 as Public Law 111-240 provides in Part IV, Small Business Size and Status Integrity, that 15 USC §632 as amended by section 1311 is amended by adding at the end the following:

(w)     Presumption.--

(1)     In general.--In every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

(2)     Deemed certifications.--The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:

(A)     Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement reserved, set aside, or otherwise classified as intended for award to small business concerns.

54.     As part of the bidding process for the Truck and Pup Contract, PENW and Jonetta Everano were required to certify their small business status to be eligible to submit and bid and to compete for the award.

55.     WCH's contract with DOE contained prohibitions against demanding or offering future employment or anything of value to a procurement official, 41 USC §423.    This was incorporated in the Truck and Pup Contract as well as subsequent contract packages let by WCH as General Condition Section 9.16.

56.     Federal Regulations FAR subpart 9.5 and the contract documents for the Truck and Pup, and subsequent subcontracts required that an Organizational Conflict of Interest (OCI) and questionnaire be submitted with the subcontractor's proposal for the bid to be responsive and eligible for consideration for award.  If PENW/FE&C had submitted a complete and truthful OCI questionnaire, certified as required by law and the contract documents, WCH would have had to not consider the bid because:

SECOND AMENDED COMPLAINT - 12

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900        TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

a.    It would have revealed that PENW and FE&C were affiliated, and thus PENW was not eligible to compete for award.

b.    It would have revealed that Jonetta Everano had previously worked on WCH contracts with Sue Palmersheim, and had years of employment with WCH that biased WCH in favor of accepting PENW's bid for the Truck and Pup and subsequently awarded contracts, even though her company's bid was on its face non-responsive, WCH waived timeliness requirements for PENW's qualifying to bid, and WCH entered into a subsequent course of conduct in awarding her cost reimbursement contracts without competition as required by FAR subpart 6.101.

## THE ADVERTISEMENT AND AWARD OF THE TRUCK AND PUP

57.    WCH solicited proposals for the truck and pup transport subcontract through a request for proposals dated April 9, 2009.  A condition of the award required the ability of the proposer to certify first that it was able to certify as a small business as defined by the North American Industry Classification System (NAICS) Code 562910 for work of environmental services, and second to be able to certify as a further set aside such as small; 8(a) disadvantaged, women-owned, or veteran owned business, etc., as defined by the Small Business Administration.

58.    The invitation contained a penalty for false statement in paragraph 13, as prescribed in 18 U.S.C. §1001.

59.    Being able to certify as a small business and as a small disadvantaged, women owned, or veteran owned business as defined by the Small Business Administration was a condition of award.

60.    Prior to the award of the subcontract in question to PENW, defendant FE&C was not qualified for the award because it could not qualify as a small business under the NAICS definition or under the Small Business Administration standards.

61.    Months before the advertisement and the award, defendant Bernie Laverentz, vice president of FE&C, sought out qualified small business contractors who he and FE&C could use

SECOND AMENDED COMPLAINT - 13

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

1    as a front so that the work could be in large part awarded to FE&C.  One of those contacted was
2    Total Site Services.

3         62.    Mr. Laverentz indicated to Total Site Services a small 8(a) woman owned
4    business, that his friend, Dennis Houston, Procurement Manager for WCH, would arrange for the
5    work to be subcontracted to be awarded to the entity, but it would be "FE&C's show, that FE&C
6    would perform the work while it would be run through Total Site Services to meet the set-a-side
7    requirements.  Total Site Services would "sit back and sign checks" and receive its overhead and
8    profit. Only after Total Site Services refused did FE&C set up its full time employee, Jonetta
9    Everano, in business as PENW.

10         63.    Total Site Services rejected this opportunity because it was "fishy."  Total Site
11    Services was not a trucking company and was unwilling to take part in such a scheme.

12         64.    FE&C thereafter approached ELR Consultants, owned by Emmitt Richards to
13    team as a subcontractor on the Truck and Pup Contract.  ELR was not a trucking company and did
14    not want to team.    Upon Mr. Richards' refusal to take part in the scheme, Defendant Bernie
15    Laverentz of FE&C commenced activities to establish Jonetta Everano as a woman owned small
16    disadvantaged business.

17         65.    Upon this determination to set her up as a woman owned disadvantaged business,
18    Jonetta Everano informed Lisa Chapman Rosa of Total Site Services that she would be receiving
19    the Truck and Pup Contract, although it was weeks away from the submission of proposals.

20         66.    Defendant Jonetta Everano of PENW was ultimately selected to perform the
21    project, even though PENW was not an independent business and could not qualify under the
22    technical requirements in the Statement of Work or Basis of Award section of the advertisement.
23    All of WCH's evaluators considered solely the experience of the ostensible subcontractor, FE&C
24    when considering the award.

25         67.    Relator Savage, on behalf of her company, timely protested PENW's size and
26    eligibility to the U.S. Small Business Administration.   The Small Business Administration

SECOND AMENDED COMPLAINT - 14

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

1    determined that PENW was not a small business for purposes of the procurement.   Because of

2    her reliance upon FE&C the size of that firm was also considered. The basis for this determination

3    included, *inter alia*, Jonetta Everano was a full-time employee of FE&C; that PENW and FE&C

4    occupied co-located office space; that PENW and FE&C shared an insurance policy; that PENW

5    and FE&C received assistance from FE&C to prepare cost proposals; PENW had no employees

6    and had no receipts; all the key employees identified in the proposal were employed by FE&C;

7    PENW had no independent qualifications.

8         68.    The SBA had exclusive jurisdiction to finally determine that PENW was other

9    than small under 13 CFR §121.401 because the contract between WCH and the DOE was a

10   "Federal procurement program," and under FAR 52.219.8, 52.219.9 as adopted by WCH in its

11   Subcontracting Plan "status as a small business is required or advantageous."

12        69.    Under 13 CFR §121.403, the SBA's size determination was binding upon the

13   parties.

14        70.    Under 13 CFR §121.1009, upon the determination of the SBA that PENW was

15   not a small business eligible for award the Contracting Officer was required  to terminate the

16   award, and to not exercise any remaining options.

17        71.    Dennis Houston, even before the decision of the SBA on the size protest of

18   PENW, informed the DOE that if PENW was determined to be other than small as it represented

19   itself he would merely not take the credit for small business and would proceed to award it as a

20   large business.

21        72.    Switching the size requirements so as to award to an ineligible subcontractor after

22   a size determination is a violation of the Small Business Act, 15 USC §637 and 645.   Mr.

23   Houston nonetheless asserted that the laws did not apply to WCH.

24        73.    Despite the finding of the SBA, WCH proceeded to award the hauling contract to

25   PENW, in violation of Section 16(d) of the Small Business Act, 15 U.S.C. §645(d), which

26

SECOND AMENDED COMPLAINT - 15

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

provides severe criminal penalties for knowingly representing the small business size status of the concern in connection with procurement programs.

74.     The size of the contract awarded to PENW was approximately $4.8 million.

75.     Through collusion and foreknowledge obtained from WCH and FE&C, defendants were able to take advantage of knowledge that the actual haulage contract would be extended to 67 weeks.  This enabled defendants to have advantages in pricing not accessible to other proposers such as Salina Savage's firm.  Had Relator Savage's firm, Savage Logistics, known, as did Jonetta Everano, Bernie Laverentz, FE&C and PENW, that the full 67 weeks of hauling would be contracted for; Savage Logistics' price would have been at least $300,000 lower than the price offered by FE&C and PENW.  The Government has been damaged at least by that sum through false claims on the Truck and Pup Contract alone.

76.     On information and belief, the original bid dates for the project were delayed several months so as to allow PENW to file its formation documents in order to claim to be a small, disadvantaged, woman-owned business.  FE&C agreed to provide PENW with all of the financing, facilities, offices, phones, management, trucks and bonding to bid the project.

77.      Dennis Houston and Sue Palmersheim of WCH willfully failed to enforce responsibility and eligibility standards, which if enforced in accordance with the invitation for bid would have rendered PENW not eligible for award under the competitive bidding laws binding upon WCH under its contract with the United States.

78.     Additionally, the contract called for billings and progress payments every 30 days.   It required billing invoices from subcontractor to contractor.   Each billing from PENW/FE&C represented a certification that PENW was in compliance with the requirements of the SBA's Small Disadvantaged Women Owned Business program.  In fact, from the date of the SBA's size determination, PENW, FE&C, and WCH knew that PENW was not in compliance.

79.     WCH thereafter billed the Department of Energy for the amounts paid to PENW, each of which invoices constituted a certification of compliance with the SBA requirements, and

SECOND AMENDED COMPLAINT - 16

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

the requirements of the solicitation and of WCH's contract with DOE, making each billing a false claim under the False Claim Act.

80.     Each of those false claims subject the false claimant to penalties of $11,000.

## THE SUBSEQUENT CONTRACTS ON I U 2 & 6

81.     After the award of the Truck and Pup contract to PENW, Sue Palmersheim and WCH continued in a course of conduct intended to frustrate the Subcontracting Plan that involved false statements to the DOE, These actions violated the laws and regulations that required a good faith performance under the Subcontracting Plan, submission of subcontracts to genuine competition, and award of contracts to *bona fide* small, disadvantaged, woman-owned businesses. Not only did Sue Palmersheim and WCH exercise all options not yet taken by WCH on the Truck and Pup contract, additional scope for IU 2&6 was added without competition despite Sue Palmersheim's letter to SBA OHA dated July 20, 2009.  In the letter, Ms. Palmersheim stated: "In execution of WCH's responsibilities under its prime contract, WCH is required to maximize the utilization of small business concerns for purchasing goods and services.  In the event of a decision that changes the size determination, WCH will revise the periodic reports required by its prime contract and will use the ruling in follow on procurements."

## REMEDIAL ACTION OF THE 100 I  U 2  & 6 WASTE SITES

82.     At about the same time that the Truck and Pup contract was being awarded, WCH advertised a project denominated <u>Remedial Action of the 100 IU 2 and 100 IU 6 Waste Sites.</u> This was a total small business set aside for small disadvantaged business, women owned small business, or service disabled veteran owned small business with a probable contract value of $5.1 Million. During Relator Savage's SBA size protest of PENW WCH canceled the solicitation and reissued it later.  However, WCH limited knowledge and opportunity to compete for this contract in order to guard against another protest from Savage and proceeded to make an award to PENW, despite having actual knowledge both from the SBA determination, and also from statements by

SECOND AMENDED COMPLAINT - 17

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

Jonetta Everano that her relationship with FE&C was unchanged from that based upon which the SBA had found her company other than small.

83.    This was done by limiting competition on the re-advertised performance on IU 2 & 6 remediation to bidders who had attended the site visit on the canceled procurement, even though a new site visit had been scheduled.

84.    Sue Palmersheim and others within WCH had actual knowledge that the same factors that lead the SBA to find PENW other than small had not changed.  This was a knowing violation of FAR 52.219-25.  Sue Palmersheim and others within WCH knew that FE&C would be "doing all the work."

85.    IU 2&6 remediation was awarded on September 23, 2009.  By the time of award, PENW was not a small disadvantaged woman owned business, and was not in a legal mentor protégé relationship with FE&C.

86.    The bids were being considered at the time of Savage's protest of PENW's size on the Truck and Pup Contract, and WCH and FE&C had actual knowledge that PENW was not eligible to compete for award or to be awarded that subcontract. The IU 2&6 contract was performed for the next year with PENW billing WCH for the work and WCH billing the DOE for the work done by PENW. Each invoice sent by either WCH or PENW/FE&C for the IU 2&6 subcontract constituted a separate false claim.

## THE SOLE SOURCE I U 2&6 TRANSPORTATION CONTRACT

87.    On September 15, 2009, even before formal award of the IU 2&6 subcontract, procurement specialist Sue Palmersheim began to seek out reasons on how she could "sole source" the hauling portion of the IU 2&6 contract to PENW without submitting the work to competition.  In October she requested reasons from her co-workers at WCH to support her "pitch" of a sole source contract rather than a competition for the work.  Her co-worker Dean Strom agreed that a sole source was a favorable option, "if we are able to pull it off."

SECOND AMENDED COMPLAINT - 18

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900        TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

88. The Sole Source Justification is a form required by FAR 52.244-2 a part of WCH's contract with the DOE and was signed by WCH on April 22, 2010, a full seven (7) months after Ms Palmersheim determined to "pitch" a sole source, and cited "unusual or compelling urgency" as her rationale.   This rationale was untrue and known to be untrue by Ms. Palmersheim and the others at WCH who signed the form.

89. WCH filed the "Non-Competitive (Sole Source) Justification Form "with the DOE on April 22, 2010 on requisition R015090A00 for the $2,800,000 contract with PENW that was materially false as to the justification for a sole source and known by WCH to be materially false in that the schedule was not in jeopardy and WCH had at least seven (7) months to arrange for the project to be submitted to competition.

90. At the time of the Sole Source Transportation contract PENW was still involved and dependent upon FE&C, a fact well known to Sue Palmersheim and WCH.

91. The Sole Source Justification Form went on to state: "PENW is a small disadvantaged, woman owned business with proven performance, safety and quality programs; and the experience required for the described services on this project.  In May 2009, PENW was awarded a competitively bid WCH transportation subcontract and over the past 12 months has developed a mature safety culture while performing this scope for WCH at several remedial waste sites (100H, 100D, and IU2&6)."  The May 2009 Truck and Pup contract was not competitively bid to small disadvantaged businesses because WCH changed the award to a large business after SBA's size determination.

92. All of the contracts issued to PENW after the initial Truck and Pup Contract in 2009 were based on the misrepresentation that it was a small disadvantaged woman owned business.  Even if she subsequently became a bona fide woman owned small disadvantaged business the initial misrepresentation gave her company an advantage of being already mobilized and an incumbent contractor.

SECOND AMENDED COMPLAINT - 19

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

93.    On information and belief WCH took credit under its Subcontracting Plan with the DOE for the dollar amounts of both the IU 2& 6 remediation contract and the sole source IU 2&6 Transportation Contract.

**CLAIMS  AGAINST WASHINGTON CLOSURE HANFORD, PHOENIX ENTERPRISES NW, LLC, ACQUISITION BUSINESS CONSULTANTS, (HEREAFTER ABC) JONETTA EVERANO, JESSICA MORALES, SAGE TEC, LLC, LAURA SHIKASHIO, FEDERAL ENGINEERS AND CONSTRUCTORS,  FOR VIOLATION OF THE FALSE CLAIMS ACT, 15 USC 637, 645, THE HUBZONE PROGRAM CODIFIED UNDER 15 USC §657, AND  THE  SMALL BUSINESS ACT  15 USC 637 AND 15 USC  645**

94.    In the "Small Business Reauthorization Act of 1997" the United States established a program popularly referred to as HUBZone.

95.    The act provided that a "contracting officer" could sole  award "sole source" contracts to any qualified HUBZone small business if  certain requirements were met.  The SBA was required to enact regulations with regard to qualifications for HUBZone participation.  These Regulations are found in 13 CFR Part 126 ET. seq.

96.    Under 13 CFR 126.200  to be a HUBZone contractor  a  concern must:

a.    With its affiliates, must meet the size standard corresponding to its primary industry classification as defined in part 121 of this Chapter.

b.    Maintain a principal office located in a HUBZone and ensure that at least 35% of its employees reside in a HUBZone.

c.    Must apply for Certification.

d.    If a joint venture, both venture members must be qualified HUBZone small businesses.  (Emphasis Supplied)

97.    WCH's Subcontracting Plan incorporated FAR 52.219-9(e) (4).  That clause required that in order to implement the Subcontracting Plan WCH must "Confirm that a subcontractor representing itself as a HUBZone small business concern is identified as a certified HUBZone small business concern by accessing the Central Contractor Registration (CCR) database or by contacting SBA."

SECOND AMENDED COMPLAINT - 20

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
999 Third Avenue
Suite 1900          Tel. 206 292 1994
Seattle, WA 98104-4001 Fax 206 292 1995

52970\01000\00613319.DOC.V1 BPB

98.     PENW is not identified as a certified HUBZone business in the CCR or in SBA's List of HUBZone Business Concerns and WCH did not contact the SBA to confirm its certification.

99.     ABC did not maintain or attempt to maintain the employee residency percentage as required by 13 CFR 126.602. It has no employees in Washington State.

100.    Neither PENW nor ABC maintains an office in a HUBZone. ABC's office is located at 2675 Stonecreek Drive in Richland, Washington.

101.    On July 1, 2010, PENW and ABC formed Phoenix-ABC A Joint Venture. The address for Phoenix-ABC A Joint Venture is 3100 George Washington Way, Suite 106, Richland, WA, which is the same address as PENW.

102.    WCH and Phoenix-ABC A Joint Venture purported to enter into a DOE mentor-protégé agreement on October 20, 2010.   This mentor-protégé agreement was not in accordance with the terms of the River Corridor Contract between WCH and the DOE in that it was not in accordance with Department of Energy Regulation DEAR 48 CFR 919.70. At the time of the Mentor Protégé Agreement neither PENW nor Phoenix-ABC A Joint Venture was qualified by being in business for at least two (2) years.

103.    WCH thereupon proceeded to award a master contract without competition to Phoenix-ABC A Joint Venture as a small woman-owned HUBZone business.   This contract was issued in the form of a "Master Agreement" calling for Truck and Pup task orders with the initial amount of $3,998,000 awarded on January 25, 2011. Twenty-five Small and Disadvantaged businesses expressed interest in competing for this contract, including several HUBZone businesses. Phoenix-ABC A Joint Venture was not and is not a qualified or certified HUBZone business. This contract now totals over $10,500,000; of which $7,998,319 was ARRA funded.

104.    The contract and task orders were let in violation of 13 CFR 126.616.

105.    Phoenix-ABC A Joint Venture was formed so WCH could sole source contracts to their protégé without competition and take credit for HUBZone under WCH's Subcontracting

SECOND AMENDED COMPLAINT - 21

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

Plan.  PENW is performing the majority of this work scope.  The Master Service Agreement states: "WCH identified the need for additional transportation services and the decision was made to award a sole source Master Agreement subcontract to Phoenix-ABC for the performance of this work due to PENW's past performance."  ABC brings very little to the Joint Venture.

106.    In the past three years, WCH has awarded PENW contracts in excess of $38 million, of which $2,392,717 was funded by ARRA.  On July 26, 2010, Battelle Memorial Institute awarded PENW a contract valued at $119,630 funded by ARRA.  PENW has received over $39 million in contracts in the past three years.  WCH awarded Phoenix-ABC A Joint Venture a sole source Master Agreement on January 25, 2011 with a size standard of $12.5 million.  Due to the large dollar value of contracts awarded to PENW, there is a strong possibility that Phoenix-ABC A Joint Venture did not qualify as a small business for this procurement or the DOE Mentor-Protégé program.

107.    On information and belief WCH reported the sole source HUBZone contracts awarded without competition of Phoenix-ABC A Joint Venture to the DOE in order to reach its HUBZone subcontracting goal of $52,564,000 required under its contract No. DE-RP06-04RL-14655.   This reporting constitutes a false claim of compliance in order to avoid liquidated damages provided in its Subcontracting Plan, Attachment J-4 to its contract with DOE.

108.    This constitutes "Failure to make a good faith effort to comply with the subcontracting plan as defined under FAR 52.219-16 (a) and (b).

109.    The foregoing actions constitute false claims under 31 USC§ 3729-32 and under ARRA.

110.    The United States has been damaged by paying more than it would have paid for the same services if they were competed, and not illegally awarded to an ineligible HUBZone contractor.   Under the law the presumed loss to the United States is the entire amount of the contract and task orders let to an ineligible subcontractor falsely claiming HUBZone status.

SECOND AMENDED COMPLAINT - 22

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL. 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

111.    On September 14, 2009, CH2M Hill Plateau Remediation Company (CHPRC) awarded PENW a contract valued at $795,500 funded by ARRA. The contracting officer and manager at CHPRC were handed the SBA's size determination letter prior to the award of the CHPRC contract. They had full knowledge that PENW and FE&C were determined to be affiliated under the ostensible subcontractor rule.

112.    The award on the above referenced contract was obtained by PENW and FE&C falsely certifying that PENW was a qualified small woman owned business.

## SAGE TEC, LLC FALSE CLAIMS

113.    Sage Tec, LLC is another company which relies heavily on FE&C's qualifications. Sage Tec, LLC was formed on February 27, 2009 (8 days after PENW's formation date of February 19, 2009) and listed its address as 3100 George Washington Way, Suite 106, Richland, WA (same address as PENW, Phoenix-ABC A Joint Venture, and at the time, was the same address of FE&C).

114.    Sage Tec, LLC's purported owner is Laura Shikashio, the wife of Larry Burdge, who at the time of its organization was FE&C's Vice President of Construction Services.

115.    On December 14, 2010, WCH awarded a $5.3 million, small disadvantaged woman owned business contract to Sage Tec, LLC and its teaming partner FE&C to clean up a chromium-contaminated waste site near Hanford's C Reactor.

116.    Based upon information and belief that Sage Tec is performing a small portion of this contract and the majority of the work is being performed by FE&C. Washington State Department of Labor & Industries' website lists Sage Tec as having "0" workers.

117.    On information and belief WCH is including the contract award to Sage Tec in its small subcontracting goals as a small disadvantaged woman owned business, when in fact Sage Tec is another front company for FE&C.

118.    Shane Bigham was working for WCH as a Subcontractor Technical Representative and then became project manager for Sage Tec.

SECOND AMENDED COMPLAINT - 23

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

119.    The projects let after September 2010 were let in violation of the Small Business Jobs Act of 2010 and the presumed loss to the United States is the amount of the contract.

120.    The forgoing described course of conduct constitutes false claims by both PENW and FE&C and the individual defendants, ABC, Phoenix-ABC A Joint Venture, and Sage Tec by falsely representing themselves as small, disadvantaged women owned, or HUBZone businesses.

121.    The foregoing described course of conduct by WCH constitutes false claims by false certifications express and implied that it was in good faith compliance with its Subcontracting Plan as well as 15 USC 637 and 657.

## SALINA SAVAGE'S PERSONAL KNOWLEDGE AND INVESTIGATION OF THE FALSE CLAIMS

122.    Following the notice of award to PENW, Salina Savage investigated PENW's qualifications and background.

123.    Salina Savage investigated the efforts of Bernie Laverentz and Dennis Houston to rig bids on the subject procurement with Jonetta Everano and obtained statements from other subcontractors who had been contacted as part of the scheme to rig bids.

124.    Ms Savage investigated leases of heavy equipment by PENW and FE&C, which would not have been made unless the conspirators were aware that the project would be extended to the full term of 67 weeks.

125.    Salina Savage went to the management of WCH in 2009 after the apparent award to PENW and protested to not only the management, but also the Contracting Officer, Dennis Houston, making it known to them that she was investigating the procurement irregularities and illegalities in the award to PENW.

126.    Dennis Houston told her "how dare she question" him, that if she prevailed the award would be changed to one for large businesses and that he would see that she never get another contract.

SECOND AMENDED COMPLAINT - 24

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900         TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

127.    This constituted retaliation that is illegal both under the False Claims Act, but also under ARRA.  Since 2009 at the time of her protest Salina Savage's firm has not only  not been awarded a subcontract, but also not even allowed to compete for a subcontract with WCH.

128.    The decision to change the designation of the award to other than a small business, after having initially solicited bids for a subcontract limited to small businesses not only violated the Subcontracting Plan, but also did not permit large businesses to compete which resulted in higher bids and further loss to the United States.  Such activities were a violation of 15 USC §637 and §645 by all defendants.

129.    Ms Savage investigated the lack of qualifications of PENW and successfully proved before SBA that PENW was an affiliate of FE&C, and was not eligible for, or to compete for, or be awarded the Truck and Pup Subcontract.

130.    But for the false certifications of eligibility and of compliance with the Federal laws and regulations and Subcontracting Plans, PENW would not have been allowed to compete for subcontracts subsequent to the illegally awarded Truck and Pup Subcontract.

131.    Ms Savage investigated other attempts by WCH and FE&C to set up front companies and to demand employment of contracting officials of WCH as managers of projects awarded to qualified women owned small businesses.

132.    Ms Savage investigated the difference in pricing for the Truck and Pup contract between that which the United States would have paid versus what it did pay by reason of the false claims.

133.    Ms Savage's information as to events and transactions was based upon her independent investigations, education, experience and knowledge.

134.    Salina Savage is the first to file and is an original source under the terms of the False Claims Act.

SECOND AMENDED COMPLAINT - 25

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
999 Third Avenue
Suite 1900          Tel. 206 292 1994
Seattle, WA 98104-4001 Fax 206 292 1995

1

## **FALSE CLAIMS**

2  135. Without limiting the specificity of the allegations above, which are incorporated

3 in their entirety, as to their conduct and false claims, the Defendants committed the following

4 false claims.

5    a. Conspired to rig bids so that PENW and FE&C would receive the Truck

6 and Pup Contract.

7    b. Conspired to rig bids so that PENW and FE&C would receive the IU 2&6

8 contract set-a-side for small disadvantaged woman owned or veteran owned businesses

9 and would receive follow-on IU 2&6 transportation contracts.

10    c. Knowingly awarded contracts set-a-side for small business to entities

11 known to be other than small businesses.

12    d. WCH failed, in good faith, to adhere to the requirements of the

13 Subcontracting Plan, the FAR, and applicable Federal small business statutes.

14    e. WCH failed to comply with the requirements of the ARRA by in good

15 faith awarding contracts to small businesses and insure that contracts were fairly

16 competed.

17    f. WCH failed to verify that both joint venturers involved in the Phoenix-

18 ABC A Joint Venture were certified HUBZone contractors before awarding over $10

19 Million of Sole Source Truck and Pup Transportation Contracts.

20    g. Failed to enforce OCI regulations that would have exposed that PENW

21 was not an independent small business.

22    h. WCH falsely reported its compliance with laws and regulations.

23    i. All defendants falsely certified their compliance with applicable Federal

24 statutes, regulations, and contract provisions in order to receive payment from the United

25 States or from WCH.

26

SECOND AMENDED COMPLAINT - 26

j.      Each invoice on every contract obtained through false certifications or bid rigging as specified in this complaint is a separate false claim, for which each of the defendants is liable for a civil penalty of up to $11,000.

## **REVERSE FALSE CLAIMS**

136.    The false claims by defendants herein were made to avoid paying back to the United States penalties under WCH's contract with the United States Department of Energy for violation of the Small Business contractor requirements of Section H, as provided in Section J of the contract between WCH and the United States Department of Energy.

## **SEPARATE CLAIMS OF SAVAGE LOGISTICS AGAINST WCH, FE&C, PENW, DENNIS HOUSTON, BERNIE LAVERENTZ, AND JONETTA EVERANO**

**Interference with Contract**

137.    Defendants, and all of them, conspired, by inside information, bid rigging, and false certifications, to deny Savage Logistics a contract which it was otherwise entitled to receive for the Truck and Pup Transportation Contract.

138.    Such conduct was an intentional, unlawful, and unpermitted interference with Savage Logistics' right to receive the contract advertised for competition.

139.    Under SBA regulations applicable to the original Truck and Pup contract WCH or DOE were required to terminate PENW's award and not to award any options.  Defendants failed to do that.

140.    Under the FAR a contract set aside for a small woman owned business  may not be withdrawn or not awarded unless the price of the second low bidder is unreasonable or if there were no adequate competition.

141.    Savage Logistics' bid on the Truck and Pup was in all respects responsive and responsible, there was adequate competition, and her price was $100,000 lower than WCH's "fair cost estimate."

SECOND AMENDED COMPLAINT - 27

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900                    TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

142.    But for the false claim of being a small disadvantaged woman owned business, and WCH's flouting the good faith requirements of its own Subcontracting Plan, Savage would have been awarded the contract.

143.    PENW and FE&C have been unjustly enriched by their false claims to be eligible for award.

144.    Savage has been denied its anticipated profits and contribution to General and Administrative expenses by the false claims and bad faith of Defendants.

145.    The amount of such damages will be set forth in supplemental pleading, but are stated at this time to be $500,000.

**VIOLATION OF THE WASHINGTON UNFAIR TRADE PRACTICES ACT RCW 19.86**

146.    The acts alleged to have been committed by all Defendants constitute unfair and deceptive acts in commerce under the Washington Unfair Trade Practices Act, including but not limited to:

a.    Conspiring to rig bids and allocate contracts in violation of Federal and State Law.

b.    Combining to limit competition on Federal Contracts affecting commerce.

c.    Denying Co-Plaintiff Savage Logistics the benefit of contract by reason of deceptive acts.

147.    Co-Plaintiff Savage Logistics is entitled to recover, in addition to its lost contract expectancy, its attorney fees, costs, and trebled damages as permitted by RCW 19.86.090.

**RETALIATION**

148.    Savage Logistics and Salina Savage have been the victims of retaliation on the part of WCH as a result of her protest of the size status of PENW.   Dennis Houston, Contracting Officer of WCH, threatened that her firm would be barred from further contracting opportunities if she protested to the SBA.

SECOND AMENDED COMPLAINT - 28

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

149.    By means of restricted competition, wrongful sole source contracts, and fraudulent HUBZone contracts, WCH denied Savage the opportunity to compete for work that her firm was qualified to perform.

150.    WCH has further retaliated by bringing vexations and baseless counterclaims for defamation against Savage.

151.    The amount of damages for retaliation will be furnished by supplemental pleading.

## **PRAYER**

WHEREFORE, Qui Tam Plaintiff/Relator Salina Savage prays for judgment against all defendants as follows:

1.    That defendants cease and desist from violating 31 USC§§ 3729 *et seq.*

2.    That the Court enter judgment against defendants jointly and severally in an amount equal to three times the amount of damages that the United States has sustained by reason of their acts in violation of the Federal False Claims Act, as well as a civil penalty of $11,000 for each violation of 31 USC §3729.

3.    That the Relator be awarded the maximum amount allowed pursuant to 31 USC §3730(d) of the Federal False Claims Act.

4.    That the Relator be awarded all costs of this action, including attorney fees and expenses.

5.    That Co-Plaintiff Savage Logistics, L.L.C. be awarded damages in an amount stated for purposes of this complaint to be $500,000.00 as damages for defendant's interference with its contract expectancy to be awarded the contract at issue.

6.    The Co-Plaintiff Savage Logistics, L.L.C. be awarded trebled damages, plus its attorney fees and costs because of the violation of the Unfair Trade Practices Act in Washington.

SECOND AMENDED COMPLAINT - 29

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900        TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB

1    7.    For such other and further relief as the court deems just and equitable.

2

3    DATED this 24th day of April, 2012

4                                    JAMESON BABBITT STITES
5                                      & LOMBARD, PLLC

6                            By:    _s/Bruce P. Babbitt_____
7                                   Bruce P. Babbitt, WSBA #4830
                                    Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 1900          TEL 206 292 1994
SEATTLE, WA 98104-4001 FAX 206 292 1995

52970\01000\00613319.DOC.V1 BPB