Bruce P. Babbitt, WSBA #4830
Matt Adamson WSBA #31731
Jameson Babbitt Stites & Lombard, PLLC
801 Second Ave., #1000
Seattle, WA  98104
Telephone:  206-292-1994
Attorneys for Plaintiff Salina Savage
and Savage Logistics

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. SALINA SAVAGE, SAVAGE LOGISTICS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> WASHINGTON CLOSURE HANFORD LLC; FEDERAL ENGINEERS AND CONSTRUCTORS, INC., PHOENIX ENTERPRISES NW, LLC; DENNIS HOUSTON, BERNIE LAVERENTZ, and JONETTA EVERANO, DOES I-V PHOENIX-ABC A JOINT VENTURE; ACQUISITION BUSINESS CONSULTANTS; JESSICA MORALES; SAGE TEC LLC; LAURA SHIKASHIO. <br> Defendants. | No.  CV-10-5051-EFS <br><br> THIRD  AMENDED COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIM ACT: SMALL BUSINESS ACT 15 USC §637 AND 15 USC §645; HUBZONE 15 USC §657;FOR RETALIATION UNDER 31 USC 3730 (h)(1) ;THE COMPETITION IN CONTRACTING ACT 41 USC §243; (2)FOR INTERFERENCE WITH CONTRACT AND FOR VIOLATION OF THE WASHINGTON STATE UNFAIR TRADE PRACTICES ACT RCW 19.86.010, *et seq.* <br><br> JURY TRIAL DEMANDED |

## I.    <u>INTRODUCTION</u>

1.1    This action is based upon continuing attempts by Washington Closure Hanford (WCH), Federal Engineers and Constructors (FE&C), Phoenix Enterprises Northwest (PENW), Acquisition Business Consultants, Jessica Morales, Phoenix-ABC A Joint Venture, Sage Tec

THIRD AMENDED COMPLAINT- 1

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

1    LLC, Laura Shikashio, Dennis Houston, Bernie Laverentz and Jonetta Everano, and Does I-V to

2    present false claims in violation of the Federal False Claims Act, 31 USC §§ 3729 and 3730.

3        1.2    Defendants have presented false claims for payment to the United States of

4    America by means of falsely certifying their compliance with the terms of the River Corridor

5    Closure Contract, Contract No. DE-AC06-05RL 14655, and the requirement of Section J-4 that it

6    contract 65% of the work to qualified small businesses, 22% to small disadvantaged businesses,

7    and 13% to women-owned small businesses.  Defendants have also presented false claims by

8    expressly and impliedly certifying that the Truck and Pup subcontract, and succeeding contracts

9    let by WCH to FE&C or PENW, to Phoenix-ABC A Joint Venture, and to Sage Tec, LLC, were

10   competed in accordance with federal law, regulations, and the requirements of the River Closure

11   Contract, including, but not limited to the Subcontracting Plan that was required of WCH as a

12   condition of award and payments.

13       1.3    From before the award of the first Truck and Pup contract in May, 2009 WCH,

14   FE&C, PENW, and individual defendants Bernie Laverentz and Jonetta Everano, in bad faith

15   conspired to breach the requirement that it carry out the subcontracting plan in good faith by

16   entering into a series of  sham procurements with Jonetta  Everano and her companies.  After the

17   award of the first Truck and Pup Contract, the named defendants continued to enter into sham

18   transactions with Phoenix and Jonetta Everano related entities, Phoenix Enterprises Northwest,

19   and Phoenix-ABC A Joint Venture, with knowledge that those entities were pass through

20   companies who merely provided their WOSB or HUBZone name and status, and with the

21   intention to avoid statutory and regulatory competitive bidding requirements, and the

22   requirements that awards be made based upon competitive bidding.

23       1.4    Defendants violated federal law in knowingly misrepresenting the small business

24   size status and HUBZone status of PENW and Phoenix-ABC A Joint Venture in violation of 15

25   USC § 645(d) and in awarding contracts to PENW and Phoenix-ABC A Joint Venture knowing

26   that it could not qualify as a small disadvantaged, women-owned, or HUBZone business.

THIRD AMENDED COMPLAINT- 2

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

1.5     The false certifications were also an attempt to avoid the penalty of up to $3 million for each milestone, and after a total reduction of otherwise earned fees for the contract up to $9 million.  This is set forth in Section H-28 of the River Closure Contract.

1.6     WCH, as is more definitively set out, *infra,* after the unlawful award to PENW/FE&C in May, 2009, continued to exercise options and award subcontracts to PENW/FE&C, and to other entities in which Jonetta Everano had an interest that were set aside for small businesses while knowing that PENW and/or FE&C were not qualified to compete for or to receive an award.

1.7     WCH has, prior to, and particularly since February, 2009, failed to carry out the Subcontracting Plan in good faith and thereby placed itself in material breach of its contract with the Department of Energy (DOE).  WCH has falsely certified to the DOE that it was competing contracts as required by its contract, applicable laws and regulations, while at the same time failing to award contracts based upon competition and actively conspiring to rig awards to favored subcontractors.

1.8     WCH has knowingly violated ARRA, the Competition in Contracting Act, The Federal Acquisition Regulations (FAR) and the applicable competition requirements of DEAR 906 by knowingly using false records and statements to justify sole source awards under "unusual and compelling circumstances" when it knew that such circumstances did not exist.

1.9     Named Defendants in addition to WCH have knowingly violated Title 13 CFR 121 by competing for, accepting, and receiving payments for, contracts set aside for competition and award to Small Disadvantaged Businesses.

1.10     Defendants Acquisition Business Consultants (ABC), Phoenix Enterprises Northwest (PENW), Jessica Morales, Jonetta Everano, and Washington Closure Hanford (WCH) have conspired and knowingly awarded and accepted contracts set aside for HUBZone certified businesses to entities known to them not to be certified HUBZone businesses, in violation of the

THIRD AMENDED COMPLAINT- 3

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
801 Second Avenue
Suite 1000                    Tel. 206 292 1994
Seattle, WA 98104             Fax 206 292 1995

52970\01000\00725687.DOC.V1 BPB

1    subcontracting plan made part of the DOE Federal Procurement describe herein, the Federal

2    Acquisition Regulations (FAR) and 15 USC §§637, 645, and 657.

3        1.11    Relator Savage's claims on behalf of the United States against Defendants Sage

4    Tec, LLC and Laura Shikashio, arising out of the $15,939,488.00 Subcontract C025228A00 of

5    falsely claimed WOSB and for the Truck and Pup Contract in the amount of $2,779,581.10 of

6    falsely claimed small business credit have been assumed by the United States in its complaint in

7    partial intervention  under 31 USC 3730 (b) (4) (A). Relator Savage only reserves her rights

8    under 31 USC 3730 (c) and (d) to the extent the government recovers.  Such partial intervention

9    was as a result of Salina Savage's disclosures and as pleaded in her 2nd Amended Complaint. The

10   claims of the United States against Sage Tec and Laura Shikashio are based upon the information

11   and disclosures of Salina Savage.

12       1.12    Relator Salina Savage brings this action after voluntarily disclosing her

13   knowledge and information to the United States as required by 31 USC §3730(e) (4) (B), all of

14   which she has personal knowledge.

15       1.13    Defendant WCH threatened to, and subsequently retaliated against Salina Savage

16   if she pursued her successful challenge to the award of the Truck and Pup Contract on the

17   grounds that PENW was not a small business, but was rather affiliated and dependent upon

18   FE&C.   Since that challenge, and Salina Savage's disclosure that she would attempt to stop

19   violations of the false claims act by defendants, WCH fulfilled the threats from Dennis Houston,

20   WCH's contracting officer, and Salina Savage's company, Savage Logistics, has not only not

21   been awarded any subcontracts with WCH at the Hanford Reservation, but also has not been

22   allowed to even compete for the award of subcontracts that were to be set aside for award to

23   qualified woman owned, small disadvantaged businesses.

24       1.14    The claims by Savage Logistics for interference with contract against the named

25   individuals and organizations arise out of the same bid rigging and false certifications that

26

THIRD AMENDED COMPLAINT- 4

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

1  underlay the false claims act.  These illegal activities resulted in Savage Logistics being denied a

2  contract that it otherwise would have been awarded.

3    1.15    The contract expenditures at issue in this lawsuit are subject to the requirements

4  of the American Recovery and Reinvestment Act of 2009, Public Law 111-5.

5    ## II.    JURISDICTION AND VENUE

6    2.1    This Court has subject matter of the Federal False Claims action pursuant to 28

7  USC §1331 and 31 USC §3732(a), which specifically confers jurisdiction on this Court for

8  actions brought pursuant to 31 USC §3729 and §3730.  31 USC §3730(a) provides that "[a]ny

9  action under section 3730 may be brought in any judicial district in which the defendant, or in

10  the case of multiple defendants, any one defendant can be found, resides, transacts business or in

11  which any act proscribed by section 3729 occurred."

12    2.2    This Court has personal jurisdiction over defendants Dennis Houston, Bernie

13  Laverentz, WCH, FE&C, Phoenix-ABC A Joint Venture, Acquisition Business Consultants, Inc.

14  (Hereafter ABC), Jessica Morales, Jonetta Everano, and PENW.

15    2.3    This Court has pendant jurisdiction of the claims of Savage Logistics for

16  interference with contract and for violation of the Washington State Unfair Trade Practices Act.

17    2.4    Salina Savage has personal knowledge of the details of this scheme to submit

18  false claims.

19    2.5    Salina Savage is the original source of the information upon which this action is

20  based.  She provided information for her company as part of a May, 2009 size protest to the

21  SBA that lead to the SBA's ruling that Jonetta Everano's company, PENW was not a small

22  disadvantaged woman owned business.

23    2.6    On December 6, 2013 the United States filed its complaint in partial intervention

24  in the complaint of Salina Savage arising out of the award of the Truck and Pup Contract

25  S009166A00 for payments other than the first segment of that work, and on the claims arising on

26  the Sage Tec, LLC procurements.

THIRD AMENDED COMPLAINT- 5

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104          FAX 206 292 1995

2.7     The new, amended claims are based upon her personal knowledge and research.

## III.    IDENTIFICATION OF THE PARTIES

3.1     In 1994, Salina Savage commenced work at Hanford for a Department of Energy subcontractor as a transportation specialist.  She became a member of the DOE Motor Carrier Evaluation Program (MCEP) to ensure that only highly qualified carriers transported DOE commodities.  Relator Savage was also a member of the DOE Transportation Compliance Evaluation Assistance Program (TCEAP) conducting technical assessments of DOE field elements and assistance in transportation and packaging management activities. During the relevant time period, Relator Salina Savage was a resident of the Eastern District of Washington and was an owner and principal officer of Relator Savage Logistics, LLC, an entity incorporated in the State of Washington with its principal place of business in Richland, Washington.

3.2     While at Hanford, Relator Savage became the subject matter expert for the Fluor Hanford spare parts administrator to administer and review spare parts inventory, establish quality levels and procurement specifications for critical spare parts that support the Hanford Nuclear Facilities by the PassPort data base system.

3.3     Relator Savage trained design authorities (engineers) and quality assurance personnel on the PassPort system for the maintenance, inventory and control of spare parts.

3.4     While working at the Hanford Facility, Relator Savage received two "Continuous Process Improvement Awards" for identifying new business practices for inventory control.

3.5     Relator Savage has taken part in various training courses and received significant certifications.  These include, *inter alia*, motor carrier safety regulations seminars, fleet safety and compliance seminars, hazardous material waste and radioactive transportation training, waste shipper certification training, certified Commercial Vehicle Safety Alliance inspector, transportation compliance evaluation systems program training, and others.

3.6     Relator Savage is certified by U.S. Department of Transportation Motor Carrier Operating Authority License, Washington Utilities and Transportation Permit, Washington

THIRD AMENDED COMPLAINT- 6

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                     TEL 206 292 1994
SEATTLE, WA 98104              FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

Transporter License, Washington State Department of Ecology Transporter Permit, U.S. Department of Transportation, PHMSA Hazmat Registration, U.S. Small Business Administration, Small Disadvantaged Business (SDB), Certification and 8-A Business Development Certification, and others.

3.7    Jonetta Everano was employed by WCH from approximately 2004 until 2007, at which time she accepted employment with FE&C.    While at WCH her responsibilities included providing technical field support and field subcontract administration/oversight for the Field Remediation group on the River Corridor Contract.    She reviewed and approved baseline schedule, submittals and work/safety procedures; monitored, inspected, and approved subcontractor work against standards, acceptance criteria, and schedule milestones; analyzed and approved subcontractor invoices and prepared change requests; negotiated with subcontractors for change notices and added work scope;  coordinated subcontractors' site permits, and training requirements; maintained project files; and initiated change notices, including identifying scope of work and estimating and approving cost.  At no time material to this action did Jonetta Everano have an 8(a) certification, was she certified as a HUBZone contractor, or did she have the technical transportation certifications or experience required to qualify as a responsive, responsible contractor under the terms of the procurements issued by WCH.

3.8    On information and belief Jonetta Everano was a co-worker and was and is a personal friend of Sue Palmersheim, the Subcontract Specialist of WCH, who as part of her regular duties as WCH's Subcontract Specialist was in charge of, *inter alia,* assigning North American Industry Classification System Codes to subcontract work, advertising subcontracts for competition, evaluating the bids of subcontractors, making awards, and reporting compliance with the Subcontracting Plan to the DOE.

3.9    Jonetta Everano, President of Phoenix Enterprises NW (PENW) at all times material to this complaint was a resident of the Eastern District of Washington.

THIRD AMENDED COMPLAINT- 7

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                TEL 206 292 1994
SEATTLE, WA 98104        FAX 206 292 1995

3.10    Bernie Laverentz is the Vice President of FE&C.  Beginning in 2009 he began conspiring with Dennis Houston, WCH's Contracting Officer to rig bids and collude to misrepresent the size and independence of subcontractors who would propose to do work under the DOE River Closure Contract. The aim of this big rigging was to set up front companies to receive DOE Subcontracts from WCH who would be contract with FE&C as their ostensible subcontractor. FE&C, under this scheme would continue to perform the scope of work and manage the subcontract with its usual procedures, supervisors and key employees.  FE&C would receive the great bulk of contract payments. WCH would under this scheme, claim the credit against its Small Business Subcontracting Plan and satisfy its obligations under the contract to use small and disadvantaged businesses.

3.11    Dennis Houston at all times material to this action was a contracting officer employed by WCH.  As such he had knowledge of upcoming procurements and had the ability to provide information as to the intentions of WCH in choosing to extend the term of subcontracts for hauling, such as the original Truck and Pup Contract and its options, to longer than the minimum term specified in the advertisement.

3.12    Washington Closure Hanford (WCH) is a Washington Limited Liability Company.  Its members are William Poulson, David Pethick, Ellen Livingston-Behan, Mark Spears, and Craig Weaver.  On March 25, 2005, the United States Department of Energy (DOE) awarded the project denominated "River Corridor Closure Contract" Contract No. DE-AC06-05RL 14655 to WCH.

3.13    Federal Engineers and Constructors, Inc. (FE&C) is a corporation formed in 2001 whose president is Richard French, a former manager of the U.S. DOE's Office of River Protection (ORP).  ORP awarded the River Corridor Closure contract to WCH. WCH thereafter awarded subcontracts to FE&C.

3.14    Phoenix Enterprises NW, LLC (PENW) is a Washington Limited Liability Company whose president is Jonetta Everano.

THIRD AMENDED COMPLAINT- 8

3.15     Acquisition Business Consultants, Inc. (ABC) is an Alaska Corporation owned by Jessica Morales, whose headquarters were at one time in Wasilla, Alaska.

3.16     Defendant Jessica Morales is the owner of ABC.  In 2009 and thereafter Ms. Morales worked as a Counselor for PTAC (Procurement Technical Assistance Centers), a federally chartered association whose counselors were described as experts who could advise small businesses on their eligibility for, *inter alia,* Small Disadvantaged Business, and HUBZone programs.  Ms. Morales resides in the Eastern District of Washington.

3.17     In August 2010 ABC formed a Joint Venture with PENW denominated Phoenix-ABC A Joint Venture.

3.18     Defendant Sage Tec LLC (Sage Tec) is an entity incorporated in the State of Washington with its principal place of business in Richland, Washington.

3.19     Defendant Laura Shikashio was the owner, president, and sole employee of Sage Tec and resided within the Eastern District of Washington.

3.20     During the relevant time period, LAURA SHIKASHIO was the owner, operator, president, and at times sole employee, of SAGE TEC and resided within the Eastern District of Washington.

3.21     Does I-V are other employees of the defendants, whose identity is presently unknown to Plaintiffs, who were co-conspirators in the acts set forth in this complaint.

## IV.     THE CONTRACT AND LEGAL REQUIREMENTS OF COMPETITION AND AWARD TO SMALL BUSINESSES

### A.     WCH's Required Certifications and Small Business Subcontracting Plan

4.1     WCH, in order to be eligible to perform and receive payments on the subject project, had to certify and maintain itself in compliance with various contract clauses, regulations and laws, including but not limited to 15 USC §§637, 645, and 657, and its subcontracting plan, which required that it make good faith efforts to award contracts to small woman owned, disadvantaged businesses.

THIRD AMENDED COMPLAINT- 9

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104          FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

4.2     On July 22, 2004, WCH submitted its Small Business Subcontracting Plan (Plan) as required by its contract with DOE.  The Plan was a required submittal under 15 USC §637 and the Federal Acquisition Regulations (FAR) 52.219-8 and 52.219.9.   Figure 2 to the Plan identified principal categories of opportunities for small business, including specifically soils excavation and backfill for women owned small businesses.

4.3     FAR 52.219.9(d) (9) required a description of the efforts that WCH would make to assure that small businesses, including women-owned small businesses, would have an equitable opportunity to compete for contracts.

4.4     FAR 52.219-9 (d) (11) required records of the efforts made by WCH to identify the described small businesses and award contracts to them.

4.5     FAR 52.219-9 (k) provided that WCH's failure to comply in good faith with the requirements of the Plan was a material breach of contract.  WCH, in order to be entitled to payment, impliedly certified to the DOE that it was complying in good faith with the terms of the Subcontracting Plan imposed by the FAR and by 15 USC §637 and §645.

4.6     FAR 52.219-25(b), part of WCH's federal contract with DOE, provided that: "For subcontractors that are not certified as a small disadvantaged business by the  Small Business Administration, the Contractor shall accept the subcontractor's written self-representation as a small  disadvantaged  business,  unless  the  contractor  has    reason  to  question  the  self-representation.

4.7     At all times material to this complaint WCH had reason to question PENW's self-representation that it was a small, disadvantaged, woman-owned business.

4.8     FAR 52.219-16 "Liquidated Damages-Subcontracting Plan" provides in part that:

a.      Failure to make a good faith effort to comply with the Subcontracting Plan, as used in this subpart, means a willful or intentional failure to perform in accordance with the Subcontracting Plan approved under the clause in this contract entitled "Small Business Subcontracting Plan," or willful or intentional action to frustrate the Plan"

THIRD AMENDED COMPLAINT- 10

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

4.9     WCH has, at all times material alleged in this complaint, knowingly, willfully and intentionally failed to perform in accordance with the subcontracting plan, and attempted to frustrate the Subcontracting Plan made part of its contract.

4.10     DOE regulations, codified in 48 CFR 919.70, established the requirements for a qualified mentor-protégé program.   Section 919.7007 (a) requires that an eligible protégé had to be an independent business that had been in business at least two (2) years prior to applying for enrollment in a mentor protégé program.    All defendants in this action at all times had actual knowledge that PENW had not been in business for at least two years, and was not an independent business.

4.11     The American Recovery and Reinvestment Act (ARRA) provides that contracts using recovery act funds be awarded using competitive procedures to the maximum extent possible.

**B.      <u>The Aid to Small Business Act</u>**

4.12     The Aid to Small Business Act, 15 USCS §637(d) requires maximum practicable opportunity for small businesses, including women-owned and controlled small businesses, as defined therein, to participate in federal contracts. In §637(d) (4) (B) and (D) the Aid to Small Business Act makes a contractor represent that it is in compliance, and will remain in compliance with the Plan, as a condition of award and continuing performance.   Each request for payment by WCH during any time as alleged in this amended complaint is a false implied certification and a false claim.

4.13     Section 637(d) (8) (A) requires representation that the contractor will carry out the requirements of clause (3) of §637 (d) in good faith, and that failure to do so is a material breach of contract.   A contractor in violation, guilty of the aforesaid material breach of contract, is not entitled to payment under its contracts.

4.14     The Aid to Small Business Act, 15 USCS §645 Offenses and Penalties, provides in clause (d) that whoever misrepresents the status of any concern as a small business in order to

THIRD AMENDED COMPLAINT- 11

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                TEL 206 292 1994
SEATTLE, WA 98104        FAX 206 292 1995

obtain for oneself or for another any subcontract that is to be included as part or all of a goal contained in a Subcontracting Plan required  pursuant to section 637 (d), is subject to fines of not more than $500,000, subject to debarment, and subject to administrative remedies under the Program Fraud Civil Remedies Act of 1986.

4.15    Subpart 19.301-1 of the Federal Acquisition Regulations, (FAR) requires an offeror must represent itself as a small business in good faith at the time of the bid or proposal. PENW was not a small business at the time of its proposal for the Truck and Pup Contract and neither it nor FE&C or WCH had any good faith belief that PENW was a small business at the time of its proposal.

4.16    The Small Business Jobs Act of 2010, enacted September 27, 2010 as Public Law 111-240 provides in Part IV, Small Business Size and Status Integrity, that 15 USC §632 as amended by section 1311 is amended by adding at the end the following:

(w)    Presumption.--

(1)    In general.--In every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

(2)    Deemed certifications.--The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:

(A)    Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement reserved, set aside, or otherwise classified as intended for award to small business concerns.

## V.    <u>THE FALSE CLAIMS ACT</u>

5.1    Originally enacted in the 1860s to combat fraud against the Union Army during the Civil War, the False Claims Act, 31 USC §§ 3729-3733, is the primary tool with which the UNITED STATES combats fraud against the Government and protects the federal fisc. The

THIRD AMENDED COMPLAINT- 12

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL. 206 292 1994
SEATTLE, WA 98104             FAX 206 292 1995

1    Supreme Court has held that the False Claims Act's provisions must be construed broadly to

2    reach "all types of fraud, without qualification, that might result in financial loss to the

3    Government." United States v. Neifert-White, 390 U.S. 228, 232, 88 S.Ct. 959 (1968).

4        5.2    The False Claims Act, at 31 USC § 3729(a)(1)(A) (formerly § 3729(a)(1) (2006)),

5    provides that a person is liable to the UNITED STATES for each instance in which the person

6    "knowingly presents, or causes to be presented, to an officer or employee of the United States

7    Government . . . a false or fraudulent claim for payment or approval."

8        5.3    As amended by the Fraud Enforcement and Recovery Act of 2009

9    (FERA), the false statements provision of the False Claims Act establishes liability for any

10    person who "knowingly makes, uses, or causes to be made or used, a false record or statement

11    material to a false or fraudulent claim." 31 USC § 3729(a)(1)(B). The prior version of the false

12    statements provision of the False Claims Act makes liable any person who "knowingly makes,

13    uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim

14    paid or approved by the Government." 31 USC § 3729(a)(2) (2006) (emphasis added to highlight

15    altered language).

16        5.4    The False Claims Act defines "knowingly" at 31 USC § 3729(b) to mean that

17    a person, with respect to information, "(1) has actual knowledge of the information; (2) acts in

18    deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of

19    the truth or falsity of the information" and further provides that no proof of specific intent to

20    defraud is required.

21        5.5    As amended on May 20, 2009, the False Claims Act defines the term "claim" to

22    mean, in relevant part: "any request or demand, whether under a contract or otherwise, for

23    money or property and whether or not the United States has title to the money or property, that --

24    (i) is presented to an officer, employee, or agent of the United States; or, (ii) is made to a

25    contractor, grantee, or other recipient, if the money or property is to be spent or used on the

26    Government's behalf or to advance a Government program or interest, and if the United States

THIRD AMENDED COMPLAINT- 13

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104              FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

Government --- (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 USC § 3729(b)(2)(A).

5.6    Any person who violates the False Claims Act is liable to the UNITED STATES for a civil penalty of not less than $5,500 and not more than $11,000, plus three (3) times the amount of damages which the Government sustains because of the act of that person. 31 USC § 3729(a); 28 C.F.R. § 85.3(a)(9).

31 USCS § 3730 (d) Provides:

(1)    If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action

…

Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 USCS § 3730 (d) Provides:

(2)    If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 USCS § 3730 (h) provides:

(h)    Relief from retaliatory actions.

THIRD AMENDED COMPLAINT- 14

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
801 Second Avenue
Suite 1000        Tel 206 292 1994
Seattle, WA 98104    Fax 206 292 1995

(1)     In general. Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter [31 USCS §§ 3721 et seq.].

(2)     Relief. Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

## VI.     THE HUBZone STATUTE AND REGULATIONS

6.1     In the "Small Business Reauthorization Act of 1997" the United States established a program popularly referred to as HUBZone.

6.2      The act provided that a "contracting officer" could  award "sole source" contracts to any qualified HUBZone small business if  certain requirements were met.  The SBA was required to enact regulations with regard to qualifications for HUBZone participation. These Regulations are found in 13 CFR Part 126 et. seq.

6.3     Under 13 CFR 126.200, to be a HUBZone contractor, a  concern must:

a.     With its affiliates, must meet the size standard corresponding to its primary industry classification as defined in part 121 of this Chapter.

b.     Maintain a principal office located in a HUBZone and ensure that at least 35% of its employees reside in a HUBZone.

c.     Must apply for Certification.

d.     If a joint venture, both venture members must be qualified HUBZone small businesses.  (Emphasis Supplied)

THIRD AMENDED COMPLAINT- 15

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104      FAX 206 292 1995

52970/01000/00725687.DOC.V1 BPB

6.4    WCH's Subcontracting Plan incorporated FAR 52.219-9(e) (4).  That clause required that in order to implement the Subcontracting Plan, WCH must "Confirm that a subcontractor representing itself as a HUBZone small business concern is identified as a certified HUBZone small business concern by accessing the Central Contractor Registration (CCR) database or by contacting SBA."

6.5    The SBA is the sole federal department or agency with the authority to determine whether a business concern qualifies as a HUBZone contractor.

6.6    At no time did defendant PENW appear as a certified HUBZone small business concern in either the Central Contractor Registration (CCR), or its successor sites, or was PENW listed as HUBZone by the SBA.

## VII.    STATEMENT OF FACTS
## ALLEGATIONS COMMON TO ALL COUNTS

### A.    Formation of PENW

7.1    In early 2009, aware of pending subcontracts that would be limited to Small Disadvantaged Women Owned Businesses and/or Service Disabled Veteran Owned Small Businesses, agents of FE&C - Bernie Laverentz, in conjunction with WCH's contracting officer, Dennis Houston - began attempts to recruit a front company to "compete" for the River Closure Contract work using FE&C's resources, key employees, equipment and funding, with the intent that the front company would be awarded the subcontract by WCH through Mr. Houston's intervention, but that FE&C would perform the meaningful portions of the work and receive the great part of the subcontract payments.

7.2    Months before the advertisement and the award, defendant Bernie Laverentz, vice president of FE&C, sought out qualified small business contractors whom he and FE&C could use as a front so that the work could be in large part awarded to FE&C.  One such company contacted was Total Site Services.

THIRD AMENDED COMPLAINT- 16

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000           TEL 206 292 1994
SEATTLE, WA 98104    FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

7.3     Mr. Laverentz indicated to Lisa Chapman Rosa of Total Site Services, a small 8(a) woman owned business, that his friend, Dennis Houston, Procurement Manager for WCH, would arrange for the work to be subcontracted to be awarded to the entity, but it would be "FE&C's show, that FE&C would perform the work while it would be run through Total Site Services to meet the set-aside requirements."  Total Site Services would "sit back and sign checks" and receive its overhead and profit. Only after Total Site Services refused did FE&C set up its full time employee, Jonetta Everano, in business as PENW.

7.4     At a subsequent meeting, Dennis Houston told Lisa Chapman Rosa that he knew of her arrangement with FE&C.

7.5     Total Site Services rejected this opportunity because it was "fishy."  Total Site Services was not a trucking company and was unwilling to take part in such a scheme.

7.6     FE&C thereafter approached ELR Consultants, owned by Emmitt Richards, to team as a subcontractor on the Truck and Pup Contract.  ELR was not a trucking company and did not want to team.   Upon Mr. Richards' refusal to take part in the scheme, Defendant Bernie Laverentz of FE&C commenced activities to establish Jonetta Everano as a woman owned small disadvantaged business.

7.7     Upon this determination to set her up as a woman owned disadvantaged business, Jonetta Everano informed Lisa Chapman Rosa of Total Site Services that she would be receiving the Truck and Pup Contract, although it was weeks away from the submission of proposals.

7.8     PENW was organized in February, 2009 with FE&C as 49% owner.  Jonetta Everano personally invested no money in the formation of PENW, but rather had PENW loan most of the 51% investment to her out of its future earnings.  PENW had no assets, address, or telephone numbers of its own and only entered into a sublease with FE&C in June, 2009, after it was awarded the initial subcontract and all of the options for Truck and Pup. Jonetta Everano was a full time employee of FE&C.  The SBA determined that PENW was an affiliate of FE&C, not eligible for award of the Truck and Pup Subcontract.

THIRD AMENDED COMPLAINT- 17

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000            TEL 206 292 1994
SEATTLE, WA 98104     FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

7.9    At the time of the initial remediation subcontractor award for IU 2&6 in September, 2009, Jonetta Everano was still employed full time by FE&C, and still shared office space.  She did not agree on FE&C's buy-out until February, 2010, and her bonding and insurance still was guaranteed by FE&C until at least June, 2010.

7.10    This activity led to the award of such subcontract on RFP R009166A00, for Transportation of Direct Loaded Bulk materials from 100 Area Waste Sites to ERDF, "Truck and Pup", to PENW, a company known by all defendants to be not qualified to perform such work, and known by all defendants not to be a qualified woman owned small business.  These activities constituted bid rigging.  This was a violation of the contract requirements that subcontracts be competed for without collusion.  Subsequent awards to PENW were also awarded based on false certifications by defendants.

7.11    On February 23, 2009, Dennis Houston, Manager of Procurement and Property for WCH, sent an email to other WCH Employees with regard to the WCH's Mentor Protégé Program.  He had been contracted by four businesses, including Jonetta Everano's company PENW.  The protégés would: "help us attain our goals in the three categories."

7.12    Of Phoenix Enterprises, NW he stated "Jonetta Everano, former WCH STR teamed with FE&C for things like equipment support.  She is a start-up business.  Jonetta is a Native American.  She understands that to be a protégé you have to be in business for two years.  She is looking for team members who have been around."

7.13    On February 25, 2009 Jonetta Everano wrote to Dennis Houston, asking to be put on a "qual list" for a project, saying, "either way you get FE&C's experience, programs, and safety record."  She thereafter emailed Dennis Houston, prior to the submittal of the Truck and Pup proposals, saying that "I did partner with FE&C as we discussed."

7.14    PENW was formed effective 19 February, 2009.   Jonetta Everano was allocated 51% of the ownership interest, and FE&C 49%.   She invested no cash in the business, and only gave a note for her percentage interest.  All of the cash invested was from FE&C.

THIRD AMENDED COMPLAINT- 18

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                TEL 206 292 1994
SEATTLE, WA 98104         FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

7.15     WCH solicited proposals for the truck and pup transport subcontract through a request for proposals dated April 9, 2009.  A condition of the award required, first, the ability of the proposer to certify as a small business as defined by the North American Industry Classification System (NAICS) Code 562910 for work of environmental services, and second to be able to certify as a further set aside, such as a small; 8(a) disadvantaged, women-owned, or veteran owned business, etc., as defined by the Small Business Administration.

7.16     The invitation contained a penalty for false statement in paragraph 13, as prescribed in 18 USC §1001.

7.17     Being able to certify as a small business and as a small disadvantaged, women owned, or veteran owned business as defined by the Small Business Administration was a condition of award.

7.18     Prior to the award of the subcontract in question to PENW, defendant FE&C was not qualified for the award because it could not qualify as a small business under the NAICS definition or under the Small Business Administration standards.

**B.     The Advertisement And Award Of The Truck And Pup**

7.19     At the time of the advertisement of the initial Truck and Pup subcontract and the award of the I U 2 & 6 remediation subcontract, Jonetta Everano:

    a.     Was employed full time at the offices of Federal Engineers and Constructors (FE&C) as a construction services manager.

    b.     At the time of procurement she had no separate address from FE&C, shared the same telephone number and fax number as FE&C, and only signed a sublease on June 1, 2009, after notice of award of the Truck and Pup subcontract.

    c.     She purchased administrative services, plant, labor materials, tools, supplies, transportation, equipment, supervision from FE&C, and FE&C was to perform all operations necessary to perform the contract.

THIRD AMENDED COMPLAINT- 19

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104        FAX 206 292 1995

d.      Her business had no employees or receipts.  Defendant Bernie Laverentz was authorized with her to negotiate the procurement.

e.      She had no contractor's registration, held no required certifications, and lacked the experience required to perform.

f.      Her business had no Department of Transportation Motor Carrier Number

g.      Her business had no Federal Employee Tax ID Number

h.      The SBA found as a fact that PENW was affiliated with FE&C and that FE&C was, with PENW, over the average receipt limit of $14 Million annually.  This made PENW other than a small disadvantaged business and not eligible for award per WCH's basis of award.

7.20    As part of the bidding process for the Truck and Pup Contract, PENW and Jonetta Everano were required to certify their small business status to be eligible to submit and bid and to compete for the award.

7.21    WCH's contract with DOE contained prohibitions against demanding or offering future employment or anything of value to a procurement official, 41 USC §423.   This was incorporated in the Truck and Pup Contract as well as subsequent contract packages let by WCH as General Condition Section 9.16.

7.22    Federal Regulations FAR subpart 9.5 and the contract documents for the Truck and Pup (and subsequent subcontracts) required that an Organizational Conflict of Interest (OCI) and questionnaire be submitted with the subcontractor's proposal for the bid to be responsive and eligible for consideration for award.  If PENW/FE&C had submitted a complete and truthful OCI questionnaire, certified as required by law and the contract documents, WCH would have had to not consider the bid because:

a.      It would have revealed that PENW and FE&C were affiliated, and thus PENW was not eligible to compete for award.

THIRD AMENDED COMPLAINT- 20

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

b.    It would have revealed that Jonetta Everano had previously worked on WCH contracts with Sue Palmersheim, and had years of employment with WCH that biased WCH in favor of accepting PENW's bid for the Truck and Pup and subsequently awarded contracts. It would also have shown that even though her company's bid was on its face non-responsive, WCH waived timeliness requirements for PENW's qualifying to bid, and WCH entered into a subsequent course of conduct in awarding her cost reimbursement contracts without competition as required by FAR subpart 6.101.

7.23    Defendant Jonetta Everano of PENW was ultimately selected to perform the project, even though PENW was not an independent business and could not qualify under the technical requirements in the Statement of Work or Basis of Award section of the advertisement. All of WCH's evaluators considered solely the experience of the ostensible subcontractor, FE&C, when considering the award.

7.24    Relator Savage, on behalf of her company, timely protested PENW's size and eligibility to the U.S. Small Business Administration.  The Small Business Administration determined that PENW was not a small business for purposes of the procurement.   Because of her reliance upon FE&C the size of that firm was also considered. The basis for this determination included, *inter alia*, Jonetta Everano was a full-time employee of FE&C; that PENW and FE&C occupied co-located office space; that PENW and FE&C shared an insurance policy; that PENW and FE&C received assistance from FE&C to prepare cost proposals; PENW had no employees and had no receipts; all the key employees identified in the proposal were employed by FE&C; PENW had no independent qualifications.

7.25    When Salina Savage informed Dennis Houston that the award to PENW was illegal and that she was protesting to the SBA asking for a size determination, Mr. Houston responded:

a.    "Who in the hell did she think that she was to question him."

b.    "If you protest you will never get another contract at Hanford."

THIRD AMENDED COMPLAINT- 21

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                TEL 206 292 1994
SEATTLE, WA 98104        FAX 206 292 1995

c.    "If SBA determined FE&C to be affiliated he would just change the award to a large business and not take small business credit."

d.    "He didn't give a rip about this contract he had never been questioned before."

7.26    Savage requested a meeting with Charles Spencer, President of WCH.  She wanted to discuss Dennis Houston's threats.  Dennis Houston, as well as counsel for WCH was at the meeting.  She invited Dennis Houston to contradict anything that she recounted: he did not.

7.27    Savage informed the participants at that meeting that she was going to go to DOE and file a lawsuit over the illegal award if it was not reversed.

7.28    As threatened, Savage's company was never given the opportunity to meaningfully compete for transportation contracts let by WCH.   Every transportation contract for disposal at ERDF was thereafter let illegally, without competition by WCH to PENW, or to Phoenix-ABC A Joint Venture.

7.29    Each transportation contract let without competitions constituted a separate act of retaliation in violation of 31 USC §3730 (h)1, by reason of her lawful acts in furtherance of an action under the False Claims Act, and in her efforts to stop one or more violations of the false claims act.

7.30    The SBA had exclusive jurisdiction to finally determine that PENW was other than small under 13 CFR §121.401, because the contract between WCH and the DOE was a "Federal procurement program," and under FAR 52.219.8, 52.219.9 as adopted by WCH in its Subcontracting Plan "status as a small business is required or advantageous."

7.31    Under 13 CFR §121.403, the SBA's size determination was binding upon the parties.

7.32    Under 13 CFR §121.1009, upon the determination of the SBA that PENW was not a small business eligible for award, the Contracting Officer was required  to terminate the award, and to not exercise any remaining options.

THIRD AMENDED COMPLAINT- 22

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
801 Second Avenue
Suite 1000            Tel. 206 292 1994
Seattle, WA 98104      Fax 206 292 1995

52970/01000/00725687.DOC.V1 BPB

7.33    Dennis Houston, even before the decision of the SBA on the size protest of PENW, informed the DOE that if PENW was determined to be other than small as it represented itself, he would merely not take the credit for small business and would proceed to award it as a large business.

7.34    Switching the size requirements so as to award to an ineligible subcontractor after a size determination is a violation of the Small Business Act, 15 USC §637 and 645.   Mr. Houston nonetheless asserted that the laws did not apply to WCH.

7.35    Despite the finding of the SBA, WCH proceeded to award the hauling contract to PENW, in violation of Section 16(d) of the Small Business Act, 15 USC §645(d), which provides severe criminal penalties for knowingly representing the small business size status of the concern in connection with procurement programs.

7.36    The size of the contract awarded to PENW was approximately $4.8 million.

7.37    Through collusion and foreknowledge obtained from WCH and FE&C, defendants were able to take advantage of knowledge that the actual haulage contract would be extended to 67 weeks.  This enabled defendants to have advantages in pricing not accessible to other proposers such as Salina Savage's firm.  Had Relator Savage's firm, Savage Logistics, known, as did Jonetta Everano, Bernie Laverentz, FE&C and PENW, that the full 67 weeks of hauling would be contracted for; Savage Logistics' price would have been at least $300,000 lower than the price offered by FE&C and PENW.  The Government has been damaged at least by that sum through false claims on the Truck and Pup Contract alone.

7.38    On information and belief, the original bid dates for the project were delayed several months so as to allow PENW to file its formation documents in order to claim to be a small, disadvantaged, woman-owned business.  FE&C agreed to provide PENW with all of the financing, facilities, offices, phones, management, trucks and bonding to bid the project.

7.39     Dennis Houston and Sue Palmersheim of WCH willfully failed to enforce responsibility and eligibility standards, which if enforced in accordance with the invitation for

THIRD AMENDED COMPLAINT- 23

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                          TEL 206 292 1994
SEATTLE, WA 98104          FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

1
2
bid would have rendered PENW not eligible for award under the competitive bidding laws binding upon WCH under its contract with the United States.

3
4
5
6
7
7.40     Additionally, the contract called for billings and progress payments every 30 days.   It required billing invoices from subcontractor to contractor.   Each billing from PENW/FE&C represented a certification that PENW was in compliance with the requirements of the SBA's Small Disadvantaged Women Owned Business program.  In fact, from the date of the SBA's size determination, PENW, FE&C, and WCH knew that PENW was not in compliance.

8
9
10
11
12
7.41     As set out in the Complaint in Intervention of the United States, WCH thereafter billed the Department of Energy for the amounts paid to PENW, each invoice of which constituted a certification of compliance with the SBA requirements, and the requirements of the solicitation and of WCH's contract with DOE, making each billing a false claim under the False Claim Act.

13
7.42     Each of those false claims subject the false claimant to penalties of $11,000.

14
15
**C.     The Subsequent Contracts On I U 2 & 6 Remedial Action Of The 100 I  U 2 & 6 Waste Sites**

16
17
18
19
20
21
7.43     After the award of the Truck and Pup contract to PENW, Sue Palmersheim and WCH continued in a course of conduct intended to frustrate the Subcontracting Plan that involved false statements to the DOE. These actions violated the laws and regulations that required a good faith performance under the Subcontracting Plan, submission of subcontracts to genuine competition, and award of contracts to *bona fide* small, disadvantaged, woman-owned businesses.

22
23
24
25
26
7.44     In a letter to SBA to SBA OHA dated July 20, 2009 Sue Palmersheim undertook to abide by the SBA's ruling on future procurements.   In her letter Ms. Palmersheim stated: "In execution of WCH's responsibilities under its prime contract, WCH is required to maximize the utilization of small business concerns for purchasing goods and services.  In the event of a

THIRD AMENDED COMPLAINT- 24

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL. 206 292 1994
SEATTLE, WA 98104         FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

decision that changes the size determination, WCH will revise the periodic reports required by its prime contract and will use the ruling in follow on procurements."

7.45    Not only did Sue Palmersheim and WCH exercise all options not yet taken by WCH on the Truck and Pup contract, she and WCH continued to award contracts to PENW with knowledge, as defined in 31 USC  3729 (b) (1) (A) that PENW was still acting as a front company for FE&C.

7.46    At about the same time that the Truck and Pup contract was being awarded, WCH advertised a project denominated <u>Remedial Action of the 100 IU 2 and 100 IU 6 Waste Sites.</u> This was a total small business set aside for small disadvantaged business, women owned small business, or service disabled veteran owned small business with a probable contract value of $5.1 Million. During Relator Savage's SBA size protest of PENW, WCH canceled the solicitation and reissued it later.  However, WCH purposefully limited knowledge and opportunity to compete for this contract in order to guard against another protest from Savage and proceeded to make an award to PENW, despite having actual knowledge both from the SBA determination, and also from statements by Jonetta Everano, that her relationship with FE&C was unchanged from that based upon which the SBA had found her company other than small.

7.47    This was done by limiting competition on the re-advertised performance on IU 2 & 6 remediation to bidders who had attended the site visit on the canceled procurement, even though a new site visit had been scheduled.

7.48    Sue Palmersheim and others within WCH had actual knowledge that the same factors that lead the SBA to find PENW other than a small woman owned business had not changed.  This was a knowing violation of FAR 52.219-25.  Sue Palmersheim and others within WCH knew that FE&C would be "doing all the work."  The evaluation of proposals by WCH on the IU 2& 6 bids by WCH's evaluation team stated: "The PENW-QA-02 is a nearly exact duplicate of the FE&C QA program manual FE&C QA 02 Rev 8.  The key persons proposed are all FE&C employees, familiar with the FE&C QA program."

THIRD AMENDED COMPLAINT- 25

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104             FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

7.49    IU 2&6 remediation contract #C011535A00 was awarded to PENW on September 23, 2009.  By the time of award, WCH had actual knowledge that PENW was not a small disadvantaged woman owned business, and was not in a legal mentor protégé relationship with FE&C.

7.50    WCH had actual knowledge that PENW was continuing to act as a front for FE&C and was acting as a pass through company for FE&C, merely providing its WOSB name and status while FE&C actually performed the work.  Under applicable SBA regulations, FE&C was an "ostensible subcontractor," and furnished all of the key employees, resources, and experience.  PENW met none of the technical or experience requirements to perform the work.

7.51    On September 29, 2009 Jonetta Everano wrote to Patrick Jewell of WCH informing him that her "restructuring strategy" was underway and that she was using Jessica Morales as a "primary resource." "She knows the regulations VERY well and can field some of the concerns from an SBA standpoint."(Capitalization by Jonetta Everano).

7.52    Jonetta Everano told WCH that she was still a full time employee of FE&C and was financially unable to provide bonding,  or insurance.

7.53     The bids were being considered at the time of Savage's protest of PENW's size on the Truck and Pup Contract, and WCH and FE&C had actual knowledge that PENW was not eligible to compete for award or to be awarded that subcontract. The IU 2&6 contract was performed until at least March, 2011, and with modifications totals at least $15,231,484.00. PENW submitted invoices and documents to WCH.  WCH in turn sent invoices and received payments from DOE for the work.  Each invoice sent by either WCH or PENW/FE&C for the IU 2&6 subcontract constituted a separate false claim that the parties were in compliance with the Subcontracting Plan, and all laws and regulations alleged above in Count IV.

### D.    The Sole Source I U 2&6 Transportation Contract #S015090A00

7.54    On September 15, 2009, even before formal award of the IU 2&6 subcontract, procurement specialist Sue Palmersheim began to seek out reasons on how she could "sole

THIRD AMENDED COMPLAINT- 26

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                          TEL 206 292 1994
SEATTLE, WA 98104                    FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

source" the hauling portion of the IU 2&6 contract to PENW without submitting the work to competition.  In October she requested reasons from her co-workers at WCH to support her "pitch" of a sole source contract rather than a competition for the work.  Her co-worker Dean Strom agreed that a sole source was a favorable option, "if we are able to pull it off."

7.55    WCH, under the terms of its contract with DOE, was required to award contracts only after full and open competition in accordance with the Competition in Contracting Act 41 USC §253, and ARRA.  The only exceptions to this requirement were found in FAR 6.302-1. Those exceptions were known by WCH not to exist.  The Justification form for other than Full Open Competition (JOFOC) submitting by WCH did not contain the requirements of FAR 6.303-2 and was materially false in that there was in fact no "unusual or compelling urgency" or other true reason to use a sole source.

7.56    The Sole Source Justification is a form required by FAR 52.244-2 a part of WCH's contract with the DOE and was signed by WCH on April 22, 2010, a full seven (7) months after Ms Palmersheim determined to "pitch" a sole source, and cited "unusual or compelling urgency" as her rationale.   This rationale was untrue and known to be untrue by Ms. Palmersheim and the others at WCH who signed the form.

7.57    WCH filed the "Non-Competitive (Sole Source) Justification Form" with the DOE on April 22, 2010, on requisition R015090A00 for the $2,800,000 contract with PENW, which was materially false as to the sole source justification and known by WCH to be materially false in that the schedule was not in jeopardy and WCH had at least seven (7) months to arrange for the project to be submitted to competition.

7.58    At the time of the Sole Source Transportation contract award, PENW was still involved and dependent upon FE&C, a fact well known to Sue Palmersheim and WCH.

7.59    The Sole Source Justification Form went on to state: "PENW is a small disadvantaged, woman owned business with proven performance, safety and quality programs; and the experience required for the described services on this project.  In May 2009, PENW was

THIRD AMENDED COMPLAINT- 27

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104             FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

awarded a competitively bid WCH transportation subcontract and over the past 12 months has developed a mature safety culture while performing this scope for WCH at several remedial waste sites (100H, 100D, and IU2&6)."

7.60    In fact the May 2009 Truck and Pup contract was not competitively bid to small disadvantaged businesses because WCH changed the award to a large business after SBA's size determination.

7.61    All of the contracts issued to PENW after the initial Truck and Pup Contract in 2009 were based on the misrepresentation that it was a small disadvantaged woman owned business. Even if she subsequently became a bona fide woman owned small disadvantaged business, the initial misrepresentation gave her company an advantage of being already funded, mobilized and an incumbent contractor.

7.62    WCH took credit under its Subcontracting Plan with the DOE for the dollar amounts of both the IU 2& 6 remediation contract and the sole source IU 2&6 Transportation Contract as awards to a Small, Disadvantaged, Woman Owned Business. Each document or invoice submitted by WCH, FE&C, and PENW constituted a false claim of compliance with the Subcontracting Plan, and the statutes and regulations cited above in Count IV.

**E. Other Illegal Sole Source Awards under the I U 2& 6 Contract.**

7.63    **100-C-7.** On or about May 31, 2010, WCH awarded a sole source contract in the form of a modification to I U 2&6 denominated 100-C-7 for Concrete Removal. There was no justifiable reason to sole source the work to PENW and WCH employees knew that the work would in fact be performed by FE&C, with PENW acting merely as a front and contributing its WOSB status.

7.64    The amount of the sole source award was $2,695,928.90, and was included in Mod 1, change notice 10 to the I U 2 & 6 contract with PENW. WCH took credit for this as an award to PENW as an award to a small woman owned business.

THIRD AMENDED COMPLAINT- 28

Jameson Babbitt Stites & Lombard, p.l.l.c.
Attorneys at Law
801 Second Avenue
Suite 1000                    Tel. 206 292 1994
Seattle, WA 98104            Fax 206 292 1995

7.65    On or October 1, 2010 WCH executed another Sole Source Justification for 600-149 UXO and PU Vault Demolition.  Although executed to PENW WCH knew that FE&C would be doing the work and that PENW was acting merely as a front and contributing its WOSB status.

7.66    The sole source justification was materially false and WCH has actual knowledge of its falsity because it knew that FE&C would be actually performing the work with PENW merely contributing its status as a Small Disadvantaged Woman Owned Business.

7.67    This was issued under modification 3 in the sum of $1,452,455 and WCH took credit for this modification as an award to a woman owned small business.

7.68    **100 D & H.**  On or about December 1, 2010 WCH issued Mod 4 to the I U 2 & 6 contract in the amount of $2,365,922.43.  In the words of Richard Hansen, procurement property manager of WCH:

"The use of Phoenix was just a vehicle to place this work as a change notice without having to competitively bid the work."

7.69    On 20 May 2010 Mr. Hansen wrote to Rodney Harrison:

2.  Sole source justification with Phoenix for 100 H (change notice work).  Shared Schedule with Foster, Cantwell and Martin.  I am to here this afternoon regarding path of either Phoenix vs. competition among on site.

Todd Nelson brought up that FE&C has complained about not including them on work being awarded.  Focus on Phoenix work awarded on sole source basis.

Dave Martin worked with Becky Hewson and we really do have a good story for the sole source for Phoenix"

7.70    The representations in the sole source justification forms for other than full and open competition, (JOFOC) in connection with the awards to PENW were false and known by WCH to be false when made.   There was no unusual or compelling urgency to sole source the work to PENW. The work would be done by FE&C using Phoenix as a front who contributed

THIRD AMENDED COMPLAINT- 29

JAMESON BABBITT STITES *&* LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000              TEL 206 292 1994
SEATTLE, WA 98104       FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

only its status as a WOSB.  WCH's summary and justification recited that "Washington Closure Hanford (WCH) selected FE&C as the single source of accomplishing the Work of each Change included in this modification."

7.71    On August 5, 2010 Greg Dixon of WCH sent a revision notice on the referenced Mod 4.  It was addressed to Phoenix Enterprises NW LLC Ned Hutchins, I U 2 &6 Project Manager, 3100 George Washington Way, Suite 106, Richland, WA 99352.  Ned Hutchins, at that time and after, was a Vice President of FE&C and the address was the home office of FE&C.

7.72    The sole source justification forms for the modifications, *supra,* are in violation of the Competition in Contracting Act, 41 USC§243, the FAR and DOE's acquisition regulations. The false information on the forms that there was unusual and compelling urgency when WCH had actual knowledge that there was not, and merely wished to avoid competing the work is a false certification of compliance by WCH with the Subcontracting Plan and the statutes and regulations cited in this complaint including, but not limited to, FAR Subpart 6.3. The presumed loss to the United States for the modifications is the total amount of the modification awarded in knowing violation of the competition in contracting act.

**F.    Claims  Against Washington Closure Hanford, Phoenix Enterprises NW, LLC, Acquisition Business Consultants, (Hereafter ABC) Jonetta Everano, Jessica Morales, For Violation Of The False Claims Act, 15 USC 637, 645, The HUBZONE Program Codified Under 15 USC §657, And  The  Small Business Act  15 USC 637 and 15 USC  645**

7.73    PENW is not identified as a certified HUBZone business in the CCR or in SBA's List of HUBZone Business Concerns and WCH did not contact the SBA to confirm its certification.

7.74    ABC did not maintain or attempt to maintain the employee residency percentage as required by 13 CFR 126.602.  It has no employees in Washington State.

7.75    Neither PENW nor ABC maintains an office in a HUBZone.  ABC's office is located at 2675 Stonecreek Drive in Richland, Washington.

THIRD AMENDED COMPLAINT- 30

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000            TEL 206 292 1994
SEATTLE, WA 98104        FAX 206 292 1995

52970/01000/00725687.DOC.V1 BPB

7.76     On July 1, 2010, PENW and ABC formed Phoenix-ABC A Joint Venture.  The address for Phoenix-ABC A Joint Venture is 3100 George Washington Way, Suite 106, Richland, WA, which is the same address as PENW.

7.77     WCH and Phoenix-ABC A Joint Venture purported to enter into a DOE mentor-protégé agreement on October 20, 2010.   This mentor-protégé agreement was not in accordance with the terms of the River Corridor Contract between WCH and the DOE in that it was not in accordance with Department of Energy Regulation DEAR 48 CFR 919.70.  At the time of the Mentor Protégé Agreement neither PENW nor Phoenix-ABC A Joint Venture was qualified by being in business for at least two (2) years.

7.78     WCH had actual knowledge that Phoenix-ABC A Joint Venture was not eligible. Richard Hansen of WCH wrote on August 17, 2010:

> I believe that the company needs to be in business for two years.  That is the entity, not the parties of the entity.  Therefore, the new JV that Phoenix and ABC have formed do not qualify until August 6,  2012.
> Phoenix does not meet the qualifications either. . .for approximately 6 months.

7.79     Sue Palmersheim of WCH suggested that WCH "take the risk and propose the entity to the DOE."  "By the time all the paperwork is processed and the other MP's graduate, Phoenix will be just 3 Mo's shy of the 2 years."

7.80     Jonetta Everano emailed on 30 August 2010 to Jason Sperling of WCH:  "I spoke with Tony Harris briefly the other day about a status of becoming a protégé.  He stated there may be some issues on the interpretation of the "two years in business" for the protégé requirements within the DOE Mentor/ Protégé program.  Jessica Morales is working with OSDBU's office right now to get that interpretation clarification.  According to what we are being told by their OSDBU Washington DC office one of the entities of the JV has had to been in business for two years, not the JV itself."

7.81     After receipt of Jonetta's email of 30 August 2010 Richard Hansen responded:

THIRD AMENDED COMPLAINT- 31

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000            TEL 206 292 1994
SEATTLE, WA 98104      FAX 206 292 1995

1

2

3

    1.  Our procedures, BCS-300-3.2 , states that "…the firm..." "...must have been in the business for at least two (2) years prior to application for enrollment into a DOE Mentor Protégé Program."  This mirrors the statement of DEAR 919.7007.

4

5

6

7

8

9

10

    7.82    The response to the Mentor/Protégé questions from the DOE by Kent Hibben small business specialist was, "<u>Given that the firms that make up the joint venture individually have met the requirements of AL 2005-08 and DEAR 919.70, that then should suffice to enable the mutually desired arrangement to proceed, . .."</u>(Emphasis Supplied.)   Neither WCH, nor Jonetta Everano, nor Jessica Morales, nor Phoenix, nor ABC, nor the Phoenix ABC A Joint Venture informed the DOE that the firms that made up the joint venture did not individually meet the requirements of DEAR 919.70.

11

12

13

14

15

16

    7.83    WCH thereupon proceeded to award a master contract, C016925A00  without competition to Phoenix-ABC A Joint Venture as a small woman-owned HUBZone business. Twenty-five Small and Disadvantaged businesses expressed interest in competing for this contract, including several HUBZone businesses.  This contract was issued in the form of a "Master Agreement" calling for Truck and Pup task orders with the initial amount of $3,998,000 awarded on January 25, 2011.   This was less than two years after the date of PENW's formation.

17

18

19

20

    7.84    WCH awarded Phoenix-ABC A Joint Venture a sole source Master Agreement on January 25, 2011 with a size standard of $12.5 million.  Due to the large dollar value of contracts awarded to PENW, there is a strong possibility that Phoenix-ABC A Joint Venture did not qualify as a small business for this procurement or the DOE Mentor-Protégé program.

21

22

    7.85    This contract now totals over $10,500,000; of which $7,998,319 was ARRA funded.

23

24

25

    7.86    Phoenix-ABC A Joint Venture was not and is not a qualified or certified HUBZone business.  The SBA, who is solely empowered to approve HUBZone entities, has issued regulations covering joint venture eligibility, particularly 13 CFR 126.616.

26

THIRD AMENDED COMPLAINT- 32

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104          FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

"What requirements must a joint venture satisfy to submit an offer on a HUBZone

Contract?"

(a) HUBZone  joint venture.  A qualified HUBZone SBC may enter into a joint venture

with another qualified HUBZone SBC for the purpose of submitting an offer for a

HUBZone contract.  The joint venture itself need not be certified as a qualified HUBZone

SBC.

7.87    The contract and task orders were awarded to Phoenix –ABC A Joint Venture in

knowing violation of 13 CFR 126.616.

7.88    Phoenix-ABC A Joint Venture was formed so WCH could sole source contracts

to their protégé without competition and take credit for HUBZone under WCH's Subcontracting

Plan.  PENW is performing the majority of this work scope.  The Master Service Agreement

states: "WCH identified the need for additional transportation services and the decision was

made to award a sole source Master Agreement subcontract to Phoenix-ABC for the

performance of this work due to PENW's past performance."  ABC brings very little to the Joint

Venture.

7.89    WCH knew that, under the terms of its Subcontracting Plan, which adopted FAR

52.219-9(e) (4)  it was not allowed to accept the representations of either ABC or PENW as to

their respective status as HUBZone certified contractors, but rather had to confirm their status by

accessing the Central Contractor Registration (CCR) or by contacting the SBA.   If WCH had

done either of those requirements it would have found that PENW was not a certified HUBZone

contractor and to this date is not a certified HUBZone contractor.

7.90    WCH reported the sole source HUBZone contracts awarded without competition

of Phoenix-ABC A Joint Venture to the DOE in order to reach its HUBZone subcontracting goal

of $52,564,000 required under its contract No. DE-RP06-04RL-14655.  This reporting

constitutes a reverse false claim of compliance in order to avoid liquidated damages provided in

its Subcontracting Plan, Attachment J-4 to its contract with DOE.

THIRD AMENDED COMPLAINT- 33

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000                    TEL 206 292 1994
SEATTLE, WA 98104             FAX 206 292 1995

7.91    This course of conduct and knowing violation of Federal Law and Regulations constitutes "Failure to make a good faith effort to comply with the subcontracting plan" as defined under FAR 52.219-16 (a) and (b).

7.92    The foregoing actions constitute false claims under 31 USC§ 3729-32 and under ARRA.

7.93    In addition to the presumed loss in the entire contract amounts illegally awarded, the United States has been damaged by paying more than it would have paid for the same services if they were competed, and not illegally awarded to an ineligible HUBZone contractor. Under the law the presumed loss to the United States is the entire amount of the contract and task orders let to an ineligible subcontractor falsely claiming HUBZone status.

### G.    Sage Tec, LLC False Claims [Laura Shikashio, Federal Engineers And Constructors]

7.94    Sage Tec, LLC is another front company which relies heavily on FE&C's qualifications. Sage Tec, LLC was formed on February 27, 2009 (8 days after PENW's formation date of February 19, 2009) and listed its address as 3100 George Washington Way, Suite 106, Richland, WA (same address as PENW, Phoenix-ABC a Joint Venture, and at the time, was the same address of FE&C).

7.95    Sage Tec, LLC's purported owner is Laura Shikashio, the wife of Larry Burdge, who at the time of its organization was FE&C's Vice President of Construction Services.

7.96    On December 14, 2010, WCH awarded a $5.3 million, small disadvantaged woman owned business contract to Sage Tec, LLC and its teaming partner FE&C to clean up a chromium-contaminated waste site near Hanford's C Reactor.

7.97    Based upon information and belief that Sage Tec is performing a small portion of this contract and the majority of the work is being performed by FE&C.  Washington State Department of Labor & Industries' website lists Sage Tec as having "0" workers.

THIRD AMENDED COMPLAINT- 34

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL. 206 292 1994
SEATTLE, WA 98104      FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

7.98     On information and belief WCH is including the contract award to Sage Tec in its small subcontracting goals as a small disadvantaged woman owned business, when in fact Sage Tec is another front company for FE&C.

7.99     Shane Bigham was working for WCH as a Subcontractor Technical Representative and then became project manager for Sage Tec.

7.100    The projects let after September 2010 were let in violation of the Small Business Jobs Act of 2010 and the presumed loss to the United States is the amount of the contract.

7.101    The forgoing described course of conduct constitutes false claims by both PENW and FE&C and the individual defendants, ABC, Phoenix-ABC A Joint Venture, and Sage Tec by falsely representing themselves as small, disadvantaged women owned, or HUBZone businesses.

7.102    The foregoing described course of conduct by WCH constitutes false claims by false certifications express and implied that it was in good faith compliance with its Subcontracting Plan as well as 15 USC 637 and 657.

7.103    The United States, by virtue of its complaint in partial intervention filed on December 6, 2013 has taken on the primary responsibility for prosecuting the counts against Sage Tec, LLC, Laura Shikashio, WCH, and FE&C related to the use of Sage Tec, LLC as a front.   By reason of that intervention Relator Salina Savage reserves her rights as a Relator/Party under 31 USC SS 3730 (c) and (d).

## VIII.     SALINA SAVAGE'S PERSONAL KNOWLEDGE AND INVESTIGATION OF THE FALSE CLAIMS

8.1     Following the notice of award to PENW, Salina Savage investigated PENW's qualifications and background.

8.2     Salina Savage investigated the efforts of Bernie Laverentz and Dennis Houston to rig bids on the subject procurement with Jonetta Everano and obtained statements from other subcontractors who had been contacted as part of the scheme to rig bids.

THIRD AMENDED COMPLAINT- 35

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000              TEL 206 292 1994
SEATTLE, WA 98104       FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

8.3     Ms. Savage investigated leases of heavy equipment by PENW and FE&C, which would not have been made unless the conspirators were aware that the project would be extended to the full term of 67 weeks.

8.4     Salina Savage went to the management of WCH in 2009 after the apparent award to PENW and protested to not only the management, but also the Contracting Officer, Dennis Houston, making it known to them that she was investigating the procurement irregularities and illegalities in the award to PENW.

8.5     Dennis Houston told her "how dare she question" him, that if she prevailed the award would be changed to one for large businesses and that he would see that she never get another contract.

8.6     This constituted retaliation that is illegal both under the False Claims Act, but also under ARRA.   Since 2009 at the time of her protest Salina Savage's firm has not only not been awarded a subcontract, but also not even allowed to compete for a subcontract with WCH.

8.7     The decision to change the designation of the award to other than a small business, after having initially solicited bids for a subcontract limited to small businesses not only violated the Subcontracting Plan, but also did not permit large businesses to compete, which resulted in higher bids and further loss to the United States.  Such activities were a violation of 15 USC §637 and §645 by all defendants.

8.8     Ms. Savage investigated the lack of qualifications of PENW and successfully proved before SBA that PENW was an affiliate of FE&C, and was not eligible to compete for or be awarded the Truck and Pup Subcontract.

8.9     But for the false certifications of eligibility and of compliance with the Federal laws and regulations and Subcontracting Plans, PENW would not have been allowed to compete for subcontracts subsequent to the illegally awarded Truck and Pup Subcontract.

THIRD AMENDED COMPLAINT- 36

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

8.10    Ms. Savage investigated other attempts by WCH and FE&C to set up front companies and to demand employment of contracting officials of WCH as managers of projects awarded to qualified women owned small businesses.

8.11    Ms. Savage investigated the difference in pricing for the Truck and Pup contract between that which the United States would have paid versus what it did pay by reason of the false claims.

8.12    Ms. Savage's information as to events and transactions was based upon her independent investigations, education, experience and knowledge.

8.13    Salina Savage is the first to file and is an original source under the terms of the False Claims Act.

## IX.    <u>FALSE CLAIMS</u>

9.1    Without limiting the specificity of the allegations above, which are incorporated in their entirety, as to their conduct and false claims, the Defendants committed the following false claims.

9.2    Conspired to rig bids so that PENW and FE&C would receive the Truck and Pup Contract.

9.3    Conspired to rig bids so that PENW and FE&C would receive the IU 2&6 contract set-a-side for small disadvantaged woman owned or veteran owned businesses and would receive follow-up IU 2&6 transportation contracts.

9.4    Knowingly awarded contracts set-a-side for small business to entities known to be other than small businesses.

9.5    WCH failed, in good faith, to adhere to the requirements of the Subcontracting Plan, the FAR, and applicable Federal small business statutes.

9.6    WCH failed to comply with the requirements of the ARRA by in good faith awarding contracts to small businesses and insure that contracts were fairly competed.

THIRD AMENDED COMPLAINT- 37

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104   FAX 206 292 1995

9.7     WCH failed to verify that both joint venturers involved in the Phoenix-ABC A Joint Venture were certified HUBZone contractors before awarding over $10 Million of Sole Source Truck and Pup Transportation Contracts.

9.8     Failed to enforce OCI regulations that would have exposed that PENW was not an independent small business.

9.9     WCH falsely reported its compliance with laws and regulations.

9.10    All defendants falsely certified their compliance with applicable Federal statutes, regulations, and contract provisions in order to receive payment from the United States or from WCH.

9.11    Each invoice on every contract obtained through false certifications or bid rigging as specified in this complaint is a separate false claim, for which each of the defendants is liable for a civil penalty of up to $11,000.

## X.    REVERSE FALSE CLAIMS

10.1    The false claims by WCH were made to avoid paying back to the United States penalties under WCH's contract with the United States Department of Energy for violation of the Small Business contractor requirements of Section H, as provided in Section J of the contract between WCH and the United States Department of Energy.

## XI.    SEPARATE CLAIMS OF SAVAGE LOGISTICS AGAINST WCH, FE&C, PENW, DENNIS HOUSTON, BERNIE LAVERENTZ, AND JONETTA EVERANO

### A.    Interference with Contract

11.1    Defendants, and all of them, conspired, by inside information, bid rigging, and false certifications, to deny Savage Logistics a contract which it was otherwise entitled to receive for the Truck and Pup Transportation Contract.

11.2    Such conduct was an intentional, unlawful, and unpermitted interference with Savage Logistics' right to receive the contract advertised for competition.

THIRD AMENDED COMPLAINT- 38

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000        TEL 206 292 1994
SEATTLE, WA 98104    FAX 206 292 1995

11.3     Under SBA regulations applicable to the original Truck and Pup contract WCH or DOE were required to terminate PENW's award and not to award any options.  Defendants failed to do that.

11.4     Under the FAR a contract set aside for a small woman owned business  may not be withdrawn or not awarded unless the price of the second low bidder is unreasonable or if there were no adequate competition.

11.5     Savage Logistics' bid on the Truck and Pup was in all respects responsive and responsible, there was adequate competition, her bid was lower than any other bona fide bidder and her price was $100,000 lower than WCH's "fair cost estimate."

11.6     But for the false claim of PENW being a small disadvantaged woman owned business, and WCH's flouting the good faith requirements of its own Subcontracting Plan, Savage would have been awarded the contract.

11.7     PENW and FE&C have been unjustly enriched by their false claims to be eligible for award.

11.8     Savage has been denied its anticipated profits and contribution to General and Administrative expenses by the false claims and bad faith of Defendants.

11.9     The amount of such damages will be proven at trial, but are stated at this time to be $500,000.

## XII.     VIOLATION OF THE WASHINGTON UNFAIR TRADE PRACTICES ACT RCW 19.86

12.1     The acts alleged to have been committed by all Defendants constitute unfair and deceptive acts in commerce under the Washington Unfair Trade Practices Act, including but not limited to:

a.     Conspiring to rig bids and allocate contracts in violation of Federal and State Law.

b.     Combining to limit competition on Federal Contracts affecting commerce.

THIRD AMENDED COMPLAINT- 39

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104     FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

c.     Denying Co-Plaintiff Savage Logistics the benefit of contract by reason of deceptive acts.

12.2     Co-Plaintiff Savage Logistics is entitled to recover, in addition to its lost contract expectancy, its attorney fees, costs, and trebled damages as permitted by RCW 19.86.090.

## XIII.   RETALIATION

13.1   Savage repeats-realleges and incorporates by reference the allegations in the counts set out above.

13.2   Savage Logistics and Salina Savage have been the victims of retaliation on the part of WCH as a result of her protest of the size status of PENW and her lawful investigation of false claims by WCH, PENW, and FE&C and the attempts to stop one or more violations of the False Claims Act.   Dennis Houston, Contracting Officer of WCH, threatened that her firm would be barred from further contracting opportunities if she protested to the SBA.

13.3     By means of restricted competition, wrongful sole source contracts, and fraudulent HUBZone contracts, WCH denied Savage the opportunity to compete for work that her firm was qualified to perform and would have received had her firm had an opportunity to compete.

13.4     WCH has further retaliated by bringing vexations and baseless counterclaims for defamation against Savage.

13.5     The amount of damages for retaliation will be furnished by supplemental pleading and proven at trial.

## PRAYER

WHEREFORE, Qui Tam Plaintiff/Relator Salina Savage prays for judgment against all defendants as follows:

1.     That defendants cease and desist from violating 31 USC§§ 3729 *et seq.*

2.     That the Court enter judgment against defendants jointly and severally in an amount equal to three times the amount of damages that the United States has sustained by reason

THIRD AMENDED COMPLAINT- 40

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000          TEL 206 292 1994
SEATTLE, WA 98104     FAX 206 292 1995

52970\01000\00725687.DOC.V1 BPB

of their acts in violation of the Federal False Claims Act, as well as a civil penalty of $11,000 for each violation of 31 USC §3729.

3.     That the Relator be awarded the maximum amount allowed pursuant to 31 USC §3730(d) of the Federal False Claims Act.

4.     That the Relator be awarded all costs of this action, including attorney fees and expenses.

5.     That Relator Savage on her behalf and Savage Logistics be awarded damages for Retaliation including special damages by not being allowed to compete for and win transportation contracts set aside for small disadvantaged women owned businesses who met the technical requirements of the procurement, doubled, plus her attorney fees, expenses and costs.

6.     That Co-Plaintiff Savage Logistics, L.L.C. be awarded damages in an amount stated for purposes of this complaint to be $500,000.00 as damages for defendants' interference with its contract expectancy to be awarded the Truck and Pup Contract S009166A00contract at issue.

7.     The Co-Plaintiff Savage Logistics, L.L.C. be awarded trebled damages, plus its attorney fees and costs because of the violation of the Unfair Trade Practices Act in Washington.

8.     For such other and further relief as the court deems just and equitable.


DATED this 10th day of January, 2014

JAMESON BABBITT STITES
& LOMBARD, PLLC


By:    *s/Bruce P. Babbitt*
       Bruce P. Babbitt, WSBA #4830
       Attorneys for Plaintiff Salina Savage and Savage Logistics

THIRD AMENDED COMPLAINT- 41

JAMESON BABBITT STITES & LOMBARD, P.L.L.C.
ATTORNEYS AT LAW
801 SECOND AVENUE
SUITE 1000      TEL 206 292 1994
SEATTLE, WA 98104     FAX 206 292 1995