JOSEPH H. HARRINGTON
Acting United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Vanessa Waldref
Daniel Hugo Fruchter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA <u>ex. rel.</u> SALINA SAVAGE, SAVAGE LOGISTICS LLC, <br><br> Plaintiff, <br><br> vs. <br><br> WASHINGTON CLOSURE HANFORD LLC, FEDERAL ENGINEERS AND CONSTRUCTORS, INC.,  SAGE TEC LLC, and LAURA SHIKASHIO, <br><br> Defendants. | CV-10-5051-SMJ <br><br><br> United States' Response to Defendant Washington Closure Hanford, LLC's, Motion for Partial Summary Judgment on Damages |

Plaintiff United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and the undersigned Assistant United States Attorneys, hereby submits its Response to Defendant Washington Closure Hanford, LLC's (WCH), Motion for Partial Summary Judgment on Damages (ECF No. 339).  As set forth herein, this Court should deny WCH's motion.

## I.    INTRODUCTION

As set forth in the United States' Complaint in Intervention (ECF No. 157), WCH knowingly violated statutorily mandated small business subcontracting

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 1

requirements by knowingly using front companies and pass-through small businesses. WCH then falsely represented to the U.S. Department of Energy ("DOE") that these entities were eligible small businesses and that WCH was in compliance with its small business subcontracting obligations.  Thus, WCH's conduct violated the False Claims Act, 31 U.S.C. § 3729(a)(1).

WCH's motion seeks to limit the United States' damages as a matter of law. Although the precise relief that WCH seeks is not clearly articulated in its motion, based on the proposed order submitted by WCH (ECF No. 339-1), it appears that WCH seeks to limit the United States' single damages (which would then be subject to mandatory trebling and additional penalties as set forth in 31 U.S.C. § 3729(a)) to certain identified contractual remedies for small business noncompliance available to DOE under WCH's River Corridor Closure (RCC) Contract.   Because WCH's motion misapplies the law and ignores the numerous factual and legal issues giving rise to various potential damage theories that must be determined by a finder of fact, WCH's motion should be denied.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Hanford Site is a 586-square mile site southeastern Washington State. During World War II and the Cold War, the Hanford Site and its many facilities and nuclear reactors were used to produce massive quantities of weapons-grade plutonium and other nuclear weapon components.[1]  In 1987, the Hanford Site finally ceased producing plutonium and the DOE began one of the largest and most complex nuclear and environmental cleanup projects in the history of the world.[2]  As part of that effort, in 2005, DOE and WCH signed the RCC Contract, a multi-billion dollar cleanup contract at a large and critical area of the Hanford Site.[3]  United States' Responsive

---

[1]      *See* http://www.hanford.gov/page.cfm/AboutHanfordCleanup

[2]      *See* http://www.hanford.gov/page.cfm/HanfordHistory

[3]      *See* http://www.hanford.gov/page.cfm/RiverCorridor

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 2

Statement of Facts in Opposition to WCH's Motion for Partial Summary Judgment on Damages (USRSOF) at ¶ 1. The RCC Contract was a cost plus incentive fee contract, meaning that WCH was entitled to recoup all of its reasonable, allowable, and allocable costs provided that those costs were incurred in accordance with contractual requirements. USRSOF at ¶ 1. In addition to recovery of its costs, WCH earned fee through performance as measured by various criteria. *Id.*

Vital to DOE and critical to the overall success of the RCC Contract was WCH's commitment and obligation to use its best efforts to subcontract large portions of the work to eligible small businesses. For example, according to the explicit terms of the RCC Contract, WCH was required to carry out the United States' policy "that [SDBs and WOSBs] shall have the maximum practicable opportunity to participate in" RCC subcontracts. USRSOF at ¶¶ 2-3, 12-13. Moreover, in order to even be eligible to bid on and be awarded the RCC Contract, WCH was required to prepare and submit a small business subcontracting plan. USRSOF at *Id.* WCH's plan set forth participation goals and commitments for various categories of small business, including small disadvantaged businesses (SDB) and woman-owned small business (WOSB), terms that are defined and for which eligibility requirements are established by SBA regulations at Title 13 of the Code of Federal Regulations. *Id.*

The RCC Contract explicitly set forth that WCH's failure to carry out its small business subcontracting plan, or the RCC Contract's small business requirements, was a "material breach of the contract" that provided DOE with a number of remedies. USRSOF at ¶¶ 3, 13-14; 48 C.F.R. § 52.219-9(k). As with any material breach, DOE could terminate the RCC Contract for default, or disallow any costs that were incurred in violation of the contract or otherwise not allowable, allocable, or reasonable. USRSOF at ¶ 14.

To underscore the importance of the small business requirements and the seriousness with which they were taken by DOE, the RCC Contract also provided DOE with a number of special, though not exclusive, remedies with respect to the small business requirements. Under Section H.28 of the contract, at various points during the RCC Contract as well as at contract closeout, DOE could unilaterally and without appeal reduce WCH's fee by $3 million for each missed small business milestone. USRSOF at ¶¶ 5, 14. Moreover, at contract closeout, if WCH failed to use good faith efforts to carry out its subcontracting plan, WCH was subject to liquidated damages in the amount of the amount by which WCH missed any small business goals. USRSOF at ¶¶ 4-5, 14. For DOE to assess WCH's performance, WCH was required to submit regular reports setting forth the amount of small business subcontracts awarded by WCH and thus claiming the amount of small business "credit" due to WCH in furtherance of various goals. USRSOF at ¶ 15.

Three subcontracts are at issue in the United States' intervened claims: a 2009 subcontract with Phoenix Enterprises NW (Phoenix), a 2010 subcontract with Defendant Sage Tec LLC (Sage Tec), and a 2012 subcontract with Sage Tec. USRSOF at ¶¶ 16, 19, 24; United States' Complaint in Partial Intervention, ECF No. 157, at ¶¶ 6.15-6.114. Each of these three subcontracts was bid by WCH as a small-business set aside subcontract, meaning that only eligible small businesses were eligible to bid on the work. USRSOF at ¶¶ 16, 19, 24. As WCH knew, Phoenix and Sage Tec were used solely for purposes of their small business status and were pass-through front companies and affiliates of defendant FE&C, the entity that actually performed the subcontracts. USRSOF at ¶¶ 17, 20-23.

Relators, a small business that bid unsuccessfully on the Phoenix subcontract and its principal owner, filed their initial *qui tam* action in early 2010. The United States declined to intervene in the relators' initial allegations. ECF No. 7. In September 2012, Relators filed an amended complaint raising new allegations, including allegations regarding the first of the Sage Tec subcontracts. ECF No. 140.

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 4

Following its investigation of these new allegations, the United States intervened in part in the *qui tam* action in August 2013, and filed its Complaint in Intervention in December 2013, naming WCH, FE&C, Sage Tec, and Sage Tec's owner, Laura Shikashio, as defendants. ECF No. 157. In October 2015, the Court denied, in full, the defendants' motions to dismiss the United States' intervened claims, and denied, in part, the defendants' motions to dismiss the relators' claims in which the United States had declined to intervene. ECF No. 267. In April 2016, the court granted WCH's request for an 180-day stay pending the Supreme Court's then-anticipated decision in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). ECF No. 317. Discovery re-started following the stay, has been active since, and is presently set to close in October 2017.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Id.* A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.* When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge."  *Id.* at 255; *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150 (2000).

## IV.    ARGUMENT

### 1.    The Small Business Act

In enacting the Small Business Act (SBA), Congress was guided by the principle that "[WOSBs and SDBs] shall have the maximum practicable opportunity to participate in the performance of participate in the performance of contracts let by any Federal agency, including contracts and subcontracts."  15 U.S.C. § 637(d)(1); USRSOF at ¶¶ 3, 13.  Moreover, prime contractors such as WCH agree to "carry out this policy in the awarding of subcontracts to the fullest extent consistent with the efficient performance" of their contract."  15 U.S.C. § 637(d)(3); USRSOF at ¶¶ 3, 13. The SBA further proves that in order to be considered a small business, an entity must be "independently owned and operated."  15 U.S.C. § 632.  The SBA emphasizes the importance of ensuring that small and other disadvantaged contractors participate in the performance of subcontracts by requiring prime contractors to submit subcontracting plans to the procuring agencies showing "percentage goals for the utilization" of these companies in performing the contract, 15 U.S.C. § 637(d)(4), (d)(6); USRSOF at ¶¶ 2-3, 12-13.  The SBA also provides: "The subcontracting plan shall be included in and made a material part of the contract." 15 U.S.C. § 637(d)(4)(B); USRSOF at ¶¶ 3, 14.  Further, the subcontracting plan must contain assurances that each offeror or bidder will submit "periodic reports … in order to determine the extent of compliance by the offeror or bidder with the subcontracting plan." 15 U.S.C. § 637(d)(6)(E); USRSOF at ¶ 15.  Accordingly, the SBA makes a prime contractor's representation that it is in compliance, and will remain in compliance with its small business subcontracting plan, and will use good faith efforts to facilitate the participation of eligible small businesses in meeting its small business goals, a material condition of award and continuing performance. 15 U.S.C. § 637(d)(4)(B), (D); USRSOF at ¶¶ 3, 14.

In addition to promoting economic policy and opportunity for small businesses, the SBA has provisions to penalize those who abuse the offered benefits. The SBA provides that a prime contractor or subcontractor's failure to comply in good faith with a subcontracting plan and the policy encouraging the greatest possible participation in the performance by disadvantaged small businesses including WOSBs, constitutes a "material breach" of the contract or subcontract. 15 U.S.C. § 637(d)(9), USRSOF at ¶¶ 3, 14. The SBA further states that any small business concern that misrepresents its status as a WOSB shall be subject to penalties under the FCA. 15 U.S.C. § 637(m)(5)(C). Finally, the Small Business Jobs Act of 2010, Public Law 111-240, codified at 15 U.S.C. § 632(w), states, in relevant part that "[i]n every contract [or] subcontract . . . which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract [or] subcontract . . . whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation." 15 U.S.C. § 632(w)(1).

2.      The False Claims Act

Originally enacted in the 1860s to combat fraud against the Union Army during the Civil War, the FCA, 31 U.S.C. §§ 3729-3733, is the primary tool with which the United States combats fraud against the Government and protects the federal fisc. *See* S. Rep. 99–345, 1986 U.S.C.C.A.N. 5266, 5273 (summary of legislative history offered in connection with substantial amendment of the FCA in 1986). In relevant part, the False Claims Act provides that a person is liable to the United States for each instance in which the person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 7

An entity that violates the False Claims Act is liable for penalties of between $5,500 and $11,000 for each false claim or statement, plus "three times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a).  The Supreme Court has explained that False Claims Act damages should be "liberally calculated to ensure that they afford the government complete indemnity for the injuries done it."  *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943) (internal citation omitted).  The measure of the government's damages is "the amount that it paid out by reason of the false statements over and above what it would have paid if the claim had been truthful." *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) (internal citation and quotation omitted).

      3.  WCH's Arguments to Limit Damages to RCC Contract H.28 and 48 C.F.R. Part 52.219-16 Should Be Rejected

WCH asserts that the United States' only damages under the False Claims Act are those provided by Section H.28 and 48 C.F.R. § 52.219-16 of the RCC Contract. [4]

---

[4]    WCH asserts that the United States is seeking as damages the entire amount paid to WCH on the RCC Contract (over $2.8 billion) or, in the alternative, the entire value of invoices that WCH submitted between January 2010 and September 2013 (approximately $1.3 billion).  WCH Br. at 2.  This is incorrect.  As recently clarified, while WCH's fraud constituted a material breach of the RCC Contract, and the United States could therefore theoretically be entitled to damages up to and including the full amounts paid to WCH (with a potential deduction for any value that DOE received), the United States is not seeking damages based on total payments under the entire $2.8 billion RCC Contract, or based on the approximately $1.3 billion paid to WCH while WCH was not in compliance with the small business subcontracting requirements. *See* USRSOF at ¶ 11.  WCH's motion should therefore be denied as moot with respect to these arguments.  The United States does seek, as part of its damages, the full value of the Sage Tec subcontracts and the Phoenix

While WCH correctly points out that each of these provisions serves as a mechanism for calculating *part* of the United States' damages, WCH ignores multiple additional sources of damages, including, but not limited to, the amount that DOE overpaid on the contracts as a result of unreasonable costs associated with WCH's fraud; the amount that DOE paid for small business work and participation that it did not receive; and up to the full value of the subcontracts at issue as contemplated by the Small Business Job Act.

A.    RCC Contract H.28 and 48 C.F.R. § 52.219-16 Are Not Exclusive Remedies or Sources of Damages

i.    The Case Law Cited by WCH Is Inapplicable Because Small Business Compliance Does Not Have a Readily Ascertainable Market Value

WCH is incorrect that the United States is limited to contractual remedies under the RCC Contract, and this argument lacks legal support.  WCH relies on *U.S. ex rel. Wall v. Circle C Constr., LLC*, 813 F. 3d 616 (6th Cir. 2016), a case in which the Sixth Circuit held that the appropriate measure of damages in a case involving underpayment of Davis-Bacon prevailing wages to electricians on a warehouse construction contract was the amount by which the wages were underpaid.  Although the Sixth Circuit noted that the Davis-Bacon regulations provided for a contractual remedy in the amount of the underpaid wages, it based its decision not on the conclusion that the available contractual remedy was exclusive as a matter of law, but on the idea that the only harm to the United States was that the electricians had been

_____

subcontract modifications at issue, which is entirely justified under the applicable law and relevant facts as set forth herein.  *Id.*

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 9

underpaid, a fact that could easily be remedied by "writing a check" for the underpaid amount. *Circle C*, 813 F.3d at 617. This case is very different. In this case, no check from WCH can restore the United States to the benefit of its bargain, or correct the fact that the millions of dollars of work and experience on the Phoenix and Sage Tec subcontracts should have gone to eligible and legitimate SDBs. Instead, this work and experience went to pass-through front companies and ultimately their affiliate (and non-SDB) FE&C.

As in this case, where the primary interest advanced by the government requirement that has been violated is *non-economic*, courts have broadly recognized that damages are not limited to the available contractual remedy. Multiple courts, including the Sixth Circuit in *Circle C*, have acknowledged that when a market value cannot be placed on compliance with the requirement, and/or the defendant would not have been eligible to participate in the contract or program at all if the United States had known the truth, it is appropriate to measure damages by the full amount of the contract or subcontract at issue. *See, e.g., U.S. v. Mackby*, 339 at 1017-19 (9th Cir. 2003) (holding that damages are the full amount of Medicare payments to the defendant where the defendant was not eligible to bill Medicare for the services, notwithstanding the argument that the services were performed); *U.S. v. Anghaie*, 633 Fed. Appx. 514, 519, 2015 WL 7720313 (11th Cir. Nov. 30, 2015) (upholding damages in the full amount of contract paid to defendant where defendants misrepresented their eligibility under small business programs causing "not a

pecuniary loss but rather a loss of opportunities to enter into small business contracts with qualified small businesses")  (internal citation and quotation omitted); *U.S. ex rel. Feldman v. Van Gorp et al.*, 697 F.3d 78, 90 (2d Cir. 2012) (upholding damages in full amount of payments where "the government bargained for something qualitatively, but not quantifiably, different from what it received"); *U.S. ex rel. Longhi v. Lithium Power Technologies*, 575 F.3d 458, 472-73 (5th Cir. 2009) (upholding damages in full amount of payments where court found that the purpose of the program was to "award money to eligible deserving small businesses" and that the "intangible benefit of providing an 'eligible deserving' business" was "lost as a result of the Defendants' fraud"); *U.S. v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009) (amount of loss full subcontract value in small business fraud criminal case); *see also Circle C*, 813 F.3d at 819 (Rogers, J., concurring) (explaining that damages in the full value of contracts is appropriate unless "the value of the injury to the public interest is calculable in terms of market value.").  Indeed, as discussed further below, Congress has expressly provided that in cases of small business fraud such as this one, damages can and should be measured by the full amount of the subcontract.  *See, infra, pp* 17-19.

Notably, courts have routinely rejected "exclusive remedy" arguments in the context of False Claims Act cases, whether couched in terms of liability or damages, and held that the False Claims Act provides for remedies in addition to any available contractual, administrative, or other legal remedies.  *See, e.g., U.S. v. Bourseau*, 531

F.3d 1159, 1171-72 (9th Cir. 2008) (rejecting argument that failure to use Medicare administrative mechanism for adjusting overpayments precluded damages under the False Claims Act); *U.S. ex rel. Roby v. Boeing*, 302 F.3d 637, 641-47 (6th Cir. 2002) (contractual FAR clause did not limit the United States' damages under the False Claims Act); *Morse Diesel Intern. Inc., v. U.S.*, 79 Fed. Cl. 116, 121-22 (Fed. Cl. 2007) (rejecting argument that False Claims Act damages were limited by the contractual and statutory penalties established in the Anti-Kickback Act); *U.S. v. Borin*, 209 F.2d 145, 148 (5th Cir. 1945) (False Claims Act intended to provide liability in addition to, not in place of, other available remedies).

In enacting the False Claims Act, Congress intended for the recoverable damages to provide "complete indemnity" the United States for any loss arising from the fraud. *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998) (citing *U.S. ex rel. Marcus v. Hess*, 317 U.S. at 549). Moreover, allowing an agency's contract drafting to artificially limit the United States' ability to recover for its full loss under the False Claims Act would, in essence, permit an agency to compromise the United States' fraud claim for less than its full value, which is prohibited by applicable law that specifically provides that an agency cannot compromise a claim of fraud. 48 C.F.R. § 33.210.

//

//

//

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 12

ii.    Even To The Extent That Contractual Remedies Were the Exclusive Means for Calculating Damages, WCH's Brief Incorrectly Excludes Multiple Additional Contractual Remedies for Its Fraud

Even if WCH were correct that the RCC Contract's provisions and its remedies constituted the sole measure of False Claims Act damages, WCH would be incorrect that the only possible measures of damage were Section H.28 and 48 C.F.R. § 52.219-16.  WCH ignores multiple other contractual and legal remedies available to the DOE under the RCC Contract that were not at issue in *Circle C* and must be considered.

For example, the RCC Contract was a cost-reimbursement contract, meaning that WCH was entitled to recovery of its costs, including subcontractor costs, only to the extent that such costs were reasonable, allocable, and allowable.  USRSOF at ¶¶ 1, 25-28; 48 C.F.R. 52.216-7; 48 C.F.R. 31.201-2).  Whether a cost is reasonable is determined by the contracting officer, and the burden is on the contractor to establish the reasonability of any costs.  *Id.*  In determining reasonability, special attention must be paid to non-arms-length transactions between affiliated entities such as FE&C and Sage Tec/Phoenix.  *Id.*  A contractor who requests reimbursement for unallowable costs is subject not only to disallowance of the unallowable costs, but to penalties. USRSOF at ¶¶ 1, 25.

In this case, as WCH knew, Sage Tec was merely a pass-through front company that did not perform any significant work on the project, and instead just passed through FE&C's costs, including FE&C's labor and equipment.  USRSOF at ¶¶ 19-28.  WCH's costs of the Sage Tec subcontracts thus included unreasonable and

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 13

unallowable "fee-on-fee," in which Sage Tec and FE&C both earned fee on the exact same work. *Id.* In fact, WCH even authored internal cost-reasonableness assessments in which it acknowledged that because Sage Tec was a mere "pass-through" not adding anything to the contract, its proposed markups were unreasonable because they merely marked up FE&C work that already included fee paid to FE&C, with no additional meaningful work being done by Sage Tec to justify any additional fee. USRSOF at ¶¶ 20-23. If DOE had known that Sage Tec was merely a pass-through affiliate and front company for FE&C that was not performing any meaningful work on the project separate from that work being performed by FE&C, it could have and would have disallowed any fee for Sage Tec -- *in addition to* the small business-specific remedies under section H.28 and 48 C.F.R. § 52.219-16. USRSOF at ¶¶ 25-28. Because the amount of fee for Sage Tec represents unallowable and unreasonable costs that the DOE would not have paid had it known the truth, any damages calculation must also include the amount of unreasonable costs borne by DOE as a result of WCH's fraud, including, but not limited to, any profit or fee paid to Sage Tec in return for lending its small business name and ostensible status to the subcontract.

In addition to unallowable fee, unlike in *Circle C*, Sage Tec, as a front company and pass-through affiliate of FE&C, was not eligible to receive the subcontracts at all because their award was restricted to eligible small businesses. USRSOF at ¶¶ 16, 19, 24. In *Circle C*, the contractor would have merely had to pay the electricians more if the contractor performed pursuant to contractual requirements or if the agency had

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 14

later learned the truth; in contrast, here, the subcontracts to Sage Tec would never have been awarded to Sage Tec in the first place if WCH truthfully represented to DOE that it knew that Sage Tec was not an eligible small business because it was a front company and pass-through affiliate of FE&C.  As discussed above, courts have routinely measured damages in the full contract amounts in such situations.  Therefore, unlike in *Circle C*, the entire amounts of those subcontracts are properly considered as False Claims Act damages.

> B.    WCH's Argument That the "Value" of Work Received By the United States Has Not Been Considered Is Premature and Misstates the Law

WCH also argues that partial summary judgment is appropriate because the United States' damage theories do not consider the "value" of work received by the United States.  As an initial matter, and as discussed further above and below, numerous courts have concluded that where a defendant misrepresents small business status, damages are appropriately calculated as the entire contract amount, without any reference to value.  For example, the defendants cite *United States v. Bornstein*, 423 U.S. 303 (1976) in which the Supreme Court stated, in a footnote, that damages for substandard tubing could be measured by "the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality."  *Id.* at 316 n. 13.  WCH omits, through bracketing, that *Bornstein* involved a market value product -- tubing -- that did not conform to contractual specifications.  This distinction is important because this case – unlike *Bornstein* -- does not involve fraud that reduced the *market value* of what

WCH was supplying.  In such cases, multiple courts have concluded that value should not be considered in assessing False Claims Act damages.[5]

Moreover, even to the extent that it was appropriate to consider the value of services performed by Sage Tec, that value, or lack thereof, must be considered by the finder of fact and then deducted from the amount paid by the United States.  *U.S. v. SAIC*, 626 F.3d 1257, 1277-80 (D.C. Cir. 2010).  In *SAIC*, the D.C. Circuit expressly rejected the defendant's contention that value could be inferred as a matter of law because the requested services were performed and the defendant's efforts were used by the United States.  *Id.*  The court instead held that the value of any services received by the United States must be determined based on the value *to the Government* and by the jury after an opportunity to hear all of the relevant evidence. *Id.*  In short, the "value" of any services to the United States, if it is relevant at all, is a matter for the jury to determine and to be deducted from the full value of contract payments made to the defendant in establishing the *amount* of damages, not a basis for precluding a damages theory as a matter of law.

Moreover, not only does WCH offer no evidence whatsoever in support of its motion to demonstrate that the United States received any value for Sage Tec's efforts, but the suggestion that any value has been received runs directly contrary to the evidence: that Sage Tec's contribution was limited to that of its small business name and status, that the United States received no value at all in return for the substantial markup that Sage Tec charged on its two subcontracts, and that the United States not only received no value from Sage Tec's (non-)work, but also did not

---

[5]    WCH correctly points out that H.28 and 48 C.F.R. § 52.219-16 are attempts, though imprecise, by DOE and WCH to estimate value to some of the subcontracting requirements at issue and, thus, any calculation of damages under H.28 or 48 C.F.R. § 52.219-16 would not require any offset based on any purported value conferred upon the DOE.

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 16

receive what it bargained for – true small business participation.  USRSOF at ¶¶ 25-28.[6]

C.    The Small Business Jobs Act of 2010 Applies to WCH's Conduct

Finally, WCH argues that the provision of the Small Business Jobs Act of 2010 (Jobs Act), that creates a presumption of loss in the amount of the full amounts of the Phoenix and Sage Tec subcontracts does not apply for three reasons: (1) the presumption did not "take effect" until 2013; (2) the only entity to which the presumption can apply is a small business that falsely represents its status; and (3) the Jobs Act creates only a presumption of loss which can be rebutted.  WCH Br. at 7-10.

Contrary to WCH's first argument, there is not a scintilla of evidence to suggest that Congress intended to delay application of the presumption of loss until the SBA promulgated regulations.  Indeed, Congress explicitly set many of the other provisions in the Jobs Act to become effective at various specified future points.  *See, e.g.,* Small Business Jobs Act of 2010, Pub. L. 111-240, 124 Stat. 2504, §§ 1111, 1122, 1133, 1135, 1401, 2111, 2113, 2121, 2122, 3000, 4106, 4222.  Nothing in the presumption of loss provision indicates any similar interest by Congress in delaying the implementation of that provision.  It is well-settled that "in the absence of an express provision in the statute itself, an act takes effect on the date of its enactment." *See United States v. Lyndell N.*, 124 F. 3d 1170, 1172 (9th Cir 1997).

Indeed, courts have routinely held the Jobs Act presumption of loss provision to apply, in civil and criminal cases, to conduct taking place between 2010 and 2013, including in the very case cited by WCH later in its brief.  *See United States v. Singh*, 195 F. Supp. 3d 25, 28 (D.D.C. 2016) (presumption applied to small business contracts awarded between 2009 and 2012); *see also United States v. Crummy*, 2017

---

[6]    The United States does not dispute that it received some value from WCH's performance of the RCC Contract as a whole, but the United States is not seeking the full amount of contract payments to WCH as damages in this case.

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 17

WL 1411461, *7 (D.D.C. April 20, 2017) (analyzing loss under presumption because contract "was awarded following the Small Business Jobs Act of 2010"), 16-cr-133-KBJ, ECF No. 1, p. 10 (Information making clear that fraud took place between December 2009 and August 2013).  WCH cites to no case in support of its novel argument that the SBA's rulemaking process somehow governed the effective date of duly-enacted legislation, presumably because no such case exists.  Taken to its logical conclusion, WCH's arguments means that by failing to publish regulations or delaying them indefinitely, the SBA could have effectively overruled Congress's clear intent in establishing the presumption.

Similarly, WCH's second argument, that the presumption only applies to the small business, and not to a large business that misrepresents the size of a small business, is contrary to the plain language of the statute, which clearly reads that the presumption applies "<u>whenever it is established</u> that a business concern other than a small business concern willfully sought and received the award by misrepresentation," and contains no limitation whatsoever regarding who the presumption may be applied against.  15 U.S.C. § 632(w) (emphasis supplied).  The presumption, by its plain language, is triggered by the existence of a misrepresentation, and not the identity of the defendant.  Indeed, the cases in which the presumption has been applied previously did not involve defendants that were small businesses at all, but rather individuals.  *See, e.g., Singh*, 195 F. Supp. 3d at 28-30; *see also Small Business Size and Status Integrity*, 78 Fed. Reg. 38811, 38816  (June 28, 2013) ("[I]t is SBA's intent that the presumption of loss shall be applied in <u>all manner of criminal, civil, administrative, contractual, common law, or other actions</u>, which the United States government may take to redress willful misrepresentation.") (emphasis added); *see also Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1146 (7th Cir. 2001) (*citing Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740-41 (1995) (agency interpretation is entitled to deference regardless of fact that interpretation may be articulated well after statute's enactment).  Moreover, SBA's final rule explicitly

clarified that the presumption would not apply to a prime contractor who relied, in good faith, on a subcontractor's misrepresentation, but that a prime contractor who did not act in good faith would be afforded no such protection from the presumption. 78 Fed. Reg. at 38814.

In addition to being contrary to the plain language of the statute as well as the SBA's interpretation, WCH's interpretation would lead to unfair and nonsensical results. If a large prime contractor schemed with a front company to misrepresent the small business status of the front company, WCH's interpretation would hold that although the United States has suffered a loss in the full amount of the contract, it can recover damages in the amount of the contract only from the front company (which is likely judgment-proof) and not from the large prime contractor, even though the companies have acted in concert to cause the loss. This makes no sense. Similarly, if a large business creates a shell affiliate LLC and then causes the affiliate to misrepresent its size status and to lie about being an affiliate, the United States can collect only from the judgment-proof affiliate and not from the large business. Individuals, under WCH's interpretation, would presumably not be subject to the presumption at all since they are not putative small businesses, meaning that an individual who willfully misrepresents his shell company LLC's small business status can escape without consequence. As with WCH's argument regarding the presumption's effective date, WCH does not cite to a single case in support of its reading, because none exists. No statutory or logical basis exists for calculating the same loss, arising from the same misrepresentation, differently depending on who the defendant is, and WCH's argument should be rejected.

Finally, WCH argues that the presumption is only a presumption and can be rebutted, including with evidence of value provided to the United States. WCH Br. at 9-10. As an initial matter, the court in *Singh* rejected this very contention, holding that the only way for the defendant to rebut the presumption was with evidence of "errors, technical malfunctions, and other similar situations that demonstrate that a

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 19

misrepresentation of size was not affirmative, intentional, willful, or actionable under the False Claims Act." *Singh*, 195 F. Supp. 3d at 30. Even to the extent that the presumption could be rebutted with evidence of value provided to the DOE, WCH has set forth no evidence of any such value, and, in any event, whether the evidence is sufficient to rebut a rebuttable presumption is necessarily a question of fact. Fed. R. Evid. 301 ("the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."); *see also, e.g., In re Garner* 246 B.R. 617, 619 (9th Cir. BAP 2000). WCH's argument thus cannot be resolved at summary judgment, particularly in this case where WCH has provided no evidence whatsoever to rebut the presumption.

## V.    CONCLUSION

WCH's arguments to limit damages ignore inconvenient facts, misapply relevant law, and fail to reckon with the basic reality that the harm to the United States', and thus the potential damages, are significantly broader than that which can be reduced to section H.28 of the RCC Contract and 48 C.F.R. § 52.219-16. WCH's arguments should be rejected and its motion denied.

Dated:  July 13, 2017.

Respectfully Submitted,

JOSEPH H. HARRINGTON
Acting United States Attorney

s/ *Vanessa R. Waldref*
Tyler H.L. Tornabene
Vanessa R. Waldref
Daniel Hugo Fruchter
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Bruce Babbitt: | bbabbitt@jbsl.com |
| David Groff: | dgroff@groffmurphy.com |
| Marisa Bavand: | mbavand@groffmurphy.com |
| Allison Murphy: | amurphy@groffmurphy.com |
| Brad Fisher: | bradfisher@dwt.com |
| Mark Bartlett: | markbartlett@dwt.com |
| Brendan Monahan: | bvm@stokeslaw.com |
| Bradford T. Axel: | Bradford.axel@stokeslaw.com |
| Mark Bartlett: | markbartlett@dwt.com |
| Richard F. Shordt: | rshordt@groffmurphy.com |

and to the following non CM/ECF participants:

Phoenix Enterprises NW, LLC
Phoenix-ABC Joint Venture
46773 Kirkpatrick Rd.
Pendleton, OR 97801

Acquisition Business Consultants
320 N. 20th
Pasco, WA 99301

*s/ Vanessa R. Waldref*
VANESSA R. WALDREF

USA Response to WCH's Motion for Partial Summary Judgment on Damages - 21