## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Attorney's Office for the Eastern District of Washington and on behalf of the United States Department of Energy and the Small Business Administration (collectively the "United States"), Washington Closure Hanford, LLC ("WCH"), and Salina Savage and Savage Logistics LLC ("Relator"), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.    WCH is a Delaware corporation, with its principal place of business in Richland, Washington. WCH is a joint venture comprised of AECOM Energy & Construction, Inc., an Ohio corporation with its principal place of business in Greenwood Village, Colorado; CH2M Hill Constructors, Inc., a Delaware corporation with its principal place of business in Englewood, Colorado; and Bechtel National, Inc., a Nevada corporation with its principal place of business in Virginia (collectively "WCH's Corporate Owners").

B.    The Hanford Site, located in southeastern Washington State, was the largest of three defense production sites in the United States, producing plutonium for the United States' nuclear arsenal. During that plutonium production mission, the Columbia River was critical to the Hanford Site because river water was needed to cool down the nuclear reactors used to generate the plutonium. As a result, all nine of the Hanford Site reactors were built in close proximity to the Columbia River. The Columbia River Corridor accounts for about 220 square miles of the Hanford Site. To address the challenges of cleaning up the Columbia River Corridor, on March 23, 2005, the United

States Department of Energy ("DOE") awarded WCH the River Corridor Closure Contract ("the RCC Contract"), a multi-billion dollar, ten-year contract for the environmental restoration, cleanup, and closure of the Columbia River Corridor.

C.  The RCC Contract was a cost-plus-incentive-fee contract, meaning that WCH was reimbursed for its material and labor costs incurred in furtherance of its designated scope of work under the RCC Contract. The United States paid WCH through a DOE-funded line of credit from which WCH paid all of its incurred allowable costs, including the costs of its subcontractors.

D.  As a condition of receiving the RCC Contract, WCH was required to establish and implement, in good faith, a small business subcontracting plan, which required WCH to establish subcontracting goals for various programs, including small disadvantaged businesses and woman owned small businesses.

E.  Sage Tec LLC ("Sage Tec") a business that represented itself to be a woman owned small business, subcontracted with WCH on two nuclear remediation subcontracts under the RCC contract.

F.  Phoenix Enterprises NW LLC ("Phoenix") a business that represented itself to be a woman owned small business, subcontracted with WCH on two nuclear remediation subcontracts under the RCC Contract.

G.  On September 25, 2012, Relator filed a Second Amended Complaint (ECF No. 140) in the United States District Court for the Eastern District of Washington captioned *United States ex rel. Salina Savage and Savage Logistics LLC v. Washington Closure Hanford LLC et al*. (EDWA No. CV-10-5051-SMJ), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("the Civil Action"). The

Relators' Second Amended Complaint alleged several claims against WCH for violations of its small business subcontracting obligations, False Claims Act violations, and various statutory and contract based violations.  Relators alleged that WCH, knowing that Sage Tec and Phoenix did not qualify as small disadvantaged, woman-owned, and/or Hub-Zone businesses, awarded them subcontracts that had been reserved for those categories of small businesses, thereby causing the submission of false claims for payment by WCH to DOE.  On August 7, 2013, the United States intervened in certain claims in the Second Amended Complaint ("the Intervened Claims") and declined to intervene in certain other claims in the Second Amended Complaint ("the Non-Intervened Claims"). (ECF No. 155).  On December 6, 2013, the United States filed its Complaint in Partial Intervention. (ECF No. 157).  The Relators thereafter filed a Third Amended Complaint.  (ECF No. 168), which included the Intervened and Non-Intervened Claims.  Throughout the litigation, WCH disputed the Intervened and Non-Intervened Claims.

H.     The United States contends that it has certain civil claims against WCH related to WCH's small business subcontracting efforts under the RCC Contract, as set forth in the United States' Complaint in Partial Intervention.  This conduct is described herein as the Covered Conduct.

I.     Relators claim that they have certain civil claims, as set forth in the Relators' Third Amended Complaint, against WCH (the Intervened and Non-Intervened Claims).

I.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

3

J.  This Agreement is neither an admission of liability by WCH or its Corporate Owners, nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. WCH shall pay to the United States $3,200,000.00 (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Washington no later than thirty (30) days after the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount from WCH and as soon as feasible after receipt, the United States shall pay $643,000 to Relator by electronic funds transfer.

3. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon WCH's full payment of the Settlement Amount, the United States releases WCH and WCH's Corporate Owners from any civil or administrative monetary claim, including any monetary contractual penalties or remedies under the terms of the RCC Contract, that the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5 below, and conditioned upon WCH's agreement in Paragraph 13 below and full payment of the Settlement Amount, Relator agrees to settlement and dismissal of the Intervened and Non-Intervened Claims and for herself and for her heirs, successors, attorneys, agents, and assigns, releases WCH from any civil monetary claim the relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733; for any statutory or common law based claims, and for any conduct, known or unknown, related to WCH's small business subcontracting under the RCC Contract. Relator's claims under 31 U.S. Code § 3730(d)(1) & (2) for expenses, attorneys' fees and costs are expressly reserved and not released by this Settlement Agreement.

5. Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

      g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

      h.      Any liability for failure to deliver goods or services due; and

      i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.      Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.      WCH waives and shall not assert any defenses WCH may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the

characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

8. WCH fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that WCH has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

9. WCH fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that WCH has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

10. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of WCH, and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3) WCH's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

7

    (4)  the negotiation and performance of this Agreement;

    (5)  the payment WCH makes to the United States pursuant to this Agreement and any payments that WCH may make to Relator, including costs and attorneys fees, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

  b.  Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by WCH, and WCH shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

  c.  Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, WCH shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by WCH or any of its subsidiaries or affiliates from the United States.  WCH agrees that the United States, at a minimum, shall be entitled to recoup from WCH any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine WCH's books and records and to disagree with any calculations submitted by WCH or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by WCH, or the effect of any such Unallowable Costs on the amount of such payments.

  11.  This Agreement is intended to be for the benefit of the Parties only.

12. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Fed. Civ. P. 41. The Joint Stipulation is attached to this Settlement Agreement as Attachment A.

13. As a condition for Relator's agreement herein, WCH agrees that Relator and its attorneys are entitled to reasonable expenses, attorney's fees and costs pursuant to 31 U.S.C. § 3730(d) for intervened and non-intervened claims settled under this agreement. The Parties reserve their rights and contentions regarding the reasonableness and scope of fees, including the recovery of fees for work performed on claims dismissed prior to this agreement. The Parties agree that the United States District Court shall have continuing jurisdiction to issue orders with regard to any disputes over the amounts for expenses, attorneys' fees and costs. Relator and WCH further agree that, should the parties be unable to reach agreement on amounts, Relator may file a motion in the district court within 60 days of the date of dismissal.

14. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

15. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Washington. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19. This Agreement is binding on WCH's successors, transferees, heirs, and assigns.

20. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

21. All parties consent to all parties' disclosure of this Agreement, and information about this Agreement, to the public.

22. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 6/7/2018    BY: _____
TYLER H.L. TORNABENE
VANESSA R. WALDREF
DANIEL HUGO FRUCHTER
Assistant United States Attorneys
Eastern District of Washington

<u>WASHINGTON CLOSURE HANFORD, LLC - DEFENDANT</u>

DATED: 6/7/18

BY: _____
SCOTT SAX
President
Washington Closure Hanford, LLC

DATED: 6/8/18

BY: _____
MARISA BAVAND
GROFF MURPHY PLLC
Counsel for WCH

<u>SALINA SAVAGE and SAVAGE LOGISTICS LLC - RELATORS</u>

DATED: _____

BY: _____
Salina Savage

DATED: _____

BY: _____
BRUCE BABBIT
Jameson Babbitt Stites & Lombard
Counsel for Salina Savage and
Savage Logistics LLC

11

## WASHINGTON CLOSURE HANFORD, LLC - DEFENDANT

DATED: _____    BY: _____
                        SCOTT SAX
                        President
                        Washington Closure Hanford, LLC


DATED: _____    BY: _____
                        MARISA BAVAND
                        GROFF MURPHY PLLC
                        Counsel for WCH


## SALINA SAVAGE and SAVAGE LOGISTICS LLC - RELATORS

DATED: 7 JUNE 2018    BY: _____
                          Salina Savage

DATED: 7 June 2018    BY: _____
                          BRUCE BABBIT
                          Jameson Babbitt Stites & Lombard
                          Counsel for Salina Savage and
                          Savage Logistics LLC

11